UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | | |
|---|---|---|
| **RICHARD JONES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 10-2776-STA-dkv** |
| | ) | |
| **CITY OF MEMPHIS; BRIDGETT HANDY-** | ) | |
| **CLAY, Public Records Coordinator for the City** | ) | |
| **of Memphis; and JILL MADAJCZKY, Senior** | ) | |
| **Assistant City Attorney for Memphis,** | ) | |
| | ) | |
| **Defendants.** | ) | |

_____

### ORDER DENYING DEFENDANTS' MOTION TO DISMISS
_____

Before the Court is Defendants' Jill Madajczky and the City of Memphis's

("Defendants") Motion to Dismiss (D.E. # 47) filed on April 18, 2011.  Plaintiff filed a Response

(D.E. # 48) on May 12, 2011.  For the reasons set forth below, Defendants' Motion is **DENIED.**

### BACKGROUND

Plaintiff initially filed his Complaint on August 24, 2010, in the Middle District of

Tennessee (D.E. # 1).  He also named a plethora of Defendants, but he took a nonsuit and

voluntarily dismissed Phil Bredesen, Governor of Tennessee; Robert Cooper, Jr., Tennessee

Attorney General; David Hl. Lillard, Jr., Tennessee State Treasurer; Justin Wilson, Tennessee

State Comptroller; Tre Hargett, Tennessee Secretary of State; Joseph Barnes, Director of Legal

Services for the Tennessee General Assembly; Gwendolyn Sims Davis, Tennessee

Commissioner of General Services; and A.C. Warton, Jr., Mayor of Memphis.  (D.E. # 15.)

1

Therefore, the remaining defendants were the City of Memphis and Bridgett Handy-Clay ("Handy-Clay"), Public Records Coordinator for the City of Memphis.  Next, Plaintiff filed an Amended Complaint (D.E. # 25) on October 20, 2010, which added a third Defendant: Jill Madajczky, Senior Assistant City Attorney for Memphis.  The parties then agreed that venue was improper in the Middle District of Tennessee and that proper venue lay in the Western District of Tennessee, so Judge Trauger transferred the case to this Court.  (D.E. # 26-29.)

Handy-Clay filed two Motions to Dismiss (D.E. # 31, 43) on November 2, 2010, and January 12, 2011, respectively.  However, the parties stipulated as to the dismissal of all claims against Handy-Clay and the office of Public Records Coordinator for the City of Memphis (D.E. # 46) on March 22, 2011.  Therefore, the defendants remaining in this case are the City of Memphis ("Memphis") and Jill Madajczky ("Madajczky").  Defendants filed their Motion to Dismiss (D.E. # 47) on April 18, 2011, and Plaintiff filed his Response (D.E. # 48) on May 12, 2011.

The following facts are taken as true for purposes of this Motion.  Plaintiff resides in Solon, Ohio, and works for the Reverend Al Sharpton ("Rev. Sharpton") as the Midwest Director of National Action Network ("NAN").  (Am. Compl. ¶ 11.)  Founded by Rev. Sharpton in 1991, NAN promotes a civil rights agenda that includes the fight for social justice and "one standard of justice and decency for all people regardless of race, religion, national origin, and gender." (*Id.* ¶ 12.)  As Midwest Director, Plaintiff engages in investigations of various activities throughout the country.  (*Id.* ¶ 13.)  His investigations brought him to the granting of a government contract in Memphis, Tennessee.  (*Id.* ¶ 14.)

On May 10, 2010, Plaintiff spoke with Handy-Clay and then emailed her the following request:

> I am the Midwest Director for [NAN] and [Rev. Sharpton]. [Rev. Sharpton] has ask[ed] me to submit a public records request for the following records[: a]n email copy (pdf) of the wining bid for the following RFQ # 2957 for the State Advocacy/State Lobbying Services December 2008 [sic].

(*Id.* ¶ 15.)  Handy-Clay responded to Plaintiff that same day and denied his request because Plaintiff was not a citizen of Tennessee as required by Tenn. Code Ann. § 10-7-503(a)(1):

> This email acknowledges receipt of your request for a copy of the winning bid for the following RFQ # 2957.  Since it does not appear that you are a Tennessee resident, I must deny your request pursuant to Tennessee Code Annotated Section 10-7-503, [which] states: " . . . open for personal inspection by any citizen of Tennessee . . ."

(*Id.* ¶ 16 (emphasis omitted).)  Plaintiff was then told to contact Madajczky to discuss his public records request.  (*Id.* ¶ 17.)  After a telephone conversation with Madajczky on May 12, 2010, she sent an email confirmation of their conversation's contents:

> As discussed on the telephone, your open records request is being denied pursuant to the provisions of Tenn. Code Ann[.] § 10-7-503, which provides [that] any "citizen of Tennessee" has the right to inspect and/or copy public records.  This office denies all public record requests from any individual or entity outside of the State of Tennessee.

(*Id.*)  Plaintiff avers that Handy-Clay and Madajczky's denial of his request reflects Memphis' ongoing custom, policy, and practice of enforcing the unconstitutional provisions of Tenn. Code Ann. § 10-7-503(a) to deny non-Tennessee citizens' requests for public records.  (*Id.* ¶ 17b.) Plaintiff states that he was forced to file this present lawsuit to gain access to his requested records.  Moreover, he anticipates making additional future public records requests to obtain government records from Memphis and other Tennessee governmental entities.  (*Id.* ¶ 18.)

3

Various governmental agencies throughout Tennessee use this Tennessee citizen requirement ("the Citizens Only Requirement") to deny access to open records requests presented by those who do not live in Tennessee.  (*Id.* ¶ 19.)  The Tennessee Public Records Act ("TPRA") included the Citizens Only Requirement when it was first enacted in 1957.  (*Id.* ¶ 20.) Furthermore, the Tennessee's Office of the Comptroller of the Currency posts on its website that Tenn. Code Ann. § 10-7-503 limits public records requests to Tennessee citizens.  (*Id.*)  In 2007, the American Civil Liberties Union of Tennessee ("ACLU-TN"), the Tennessee Coalition on Open Government, and other public interest grounds testified in front of the Open Records Sub-Committee of the Special Joint Committee on Open Records, explaining that the provision was a violation of the Privileges and Immunities Clause of the U.S. Constitution and that it should be repealed.  (*Id.*)

However, the Tennessee Attorney General's Office issued two opinions in 1999 and 2001 stating that the Citizens Only Requirement in Tenn. Code Ann. § 10-7-503 was constitutionally enforceable.  (*Id.* ¶ 20a.)  The 2001 opinion referred the question regarding the constitutionality the Citizens Only Requirement to the 1999 opinion.

In 2008, the Tennessee General Assembly amended the TPRA, but they failed to repeal the Citizens Only Requirement.  (*Id.* ¶ 21.)  As early as January of 2007, ACLU-TN began monitoring denial of access to Tennessee's public records on the basis of the Citizen Only Requirement.  (*Id.* ¶ 22.)  Since then, ACLU-TN has been made aware of numerous situations where both in-state and out-of-state residents were denied access to Tennessee's open public records because they could not or would not prove that the requesting party was a Tennessee citizen.  (*Id.* ¶ 23.)  In more than one instance, the requested records were produced upon the

4

threat of or just after suit was filed.  (*Id.*)  Plaintiff avers that "[i]f relief is not granted in the present litigation, records will continue to be withheld from journalists, authors, business people[,] and concerned citizens who have an interest in Tennessee events in violation of their constitutional rights."  (*Id.* ¶ 24.)

The Amended Complaint contains two Counts for Relief.  First, Plaintiff alleges a violation of his rights under the Privileges and Immunities Clause as provided by 42 U.S.C. § 1983.  (*Id.* at 6.)  In support thereof, he cites the Constitution and several cases from the Supreme Court and Third Circuit.  (*Id.* ¶ 27-31.)  According to Plaintiff, the TPRA limits access to public records to only "citizens of Tennessee," and this limitation deprives him of the ability to engage in his calling as a civil rights advocate.  (*Id.* ¶ 33.)  The denial of his request for Memphis contract bid records deprived him of his ability to engage in "effective advocacy and participation in the political process" because he could not access the information he sought.  (*Id.* ¶ 34.)  Plaintiff concludes that Memphis "does not have a substantial reason for its discriminatory policy, nor can the State of Tennessee or any municipality have a substantial reason for the continued enforcement of this unconstitutional law."  (*Id.*)  Therefore, Plaintiff states that the Citizens Only Requirement prevents Plaintiff from gaining access to the records he seeks and violates his guaranteed rights in violation of the Privileges and Immunities Clause of the U.S. Constitution.  (*Id.* ¶ 35.)

Second, Plaintiff alleges a violation of his rights under the Commerce Clause as provided by 42 U.S.C. § 1983.  (*Id.* at 8.)  In support thereof, Plaintiff cites the Constitution and several Supreme Court cases interpreting the Dormant Commerce Clause.  (*Id.* ¶ 38-41.)  He states that the TPRA discriminates against interstate commerce because it restricts access to public records

to Tennessee citizens and serves no legitimate state interest.  (*Id.* ¶ 42.)  It also discriminated against Plaintiff in his role as a civil rights advocate: he cannot access the public records he seeks because he does not reside in Tennessee.  (*Id.* ¶ 43.)  Plaintiff then concludes that the Citizens Only Requirement violates the Commerce Clause of the U.S. Constitution.  (*Id.* ¶ 44.)

## STANDARD OF REVIEW

A defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").  However, because Defendants filed an Answer (D.E. # 45) before filing this Motion to Dismiss, the Court will treat this Motion as a motion for judgment on the pleadings under Rule 12(c).[1]  When the Rule 12(b)(6) defense is raised by a Rule 12(c) motion for judgment on the pleadings, courts apply the standard for reviewing a Rule 12(b)(6) motion.[2]

When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pled factual allegations of the complaint as true, construe those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in favor of the plaintiff.[3]  However, legal conclusions "masquerading as factual allegations" or unwarranted factual inferences including "conclusory allegations" need not be accepted as true.[4]  To avoid dismissal under Rule

---

[1]       *See Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir. 1987); Fed. R. Civ. P. 12(c); Fed. R. Civ. P. 12(h)(2).  In his Response, Plaintiff notes that Defendants' Motion is untimely and that the Court should deny the Motion on that basis alone.  (Pl.'s Resp., D.E. # 48, at 1-2.)  However, the Court has chosen to treat Defendants' Motion as a Motion for Judgment on the Pleadings.  Therefore, the Court will not deny Defendants' Motion on the basis that it is untimely.

[2]       *See Morgan*, 829 F.2d at 11.

[3]       *Jones v. City of Cincinnati*, 521 F.3d 555, 559 (6th Cir. 2007).

[4]       *Id.*

6

12(b)(6), "the complaint must contain either direct or inferential allegations" with respect to all material elements of the claim.[5]

Under Rule 8 of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"[6]  Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[7]  To survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."[8]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[9]

## ANALYSIS

The Tennessee statutory provision at issue in this case provides in pertinent part that

> [a]ll state, county, and municipal records shall, at all times during business hours,
> which for public hospitals shall be during the business hours of their
> administrative offices, be open for personal inspection *by any citizen of this state*,
> and those in charge of the records shall not refuse such right of inspection to any
> citizens unless otherwise provided by state law.[10]

---

[5]     *Eidson v. State of Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007).

[6]     Fed. R. Civ. P. 8(a)(2).

[7]     *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1953 (2009); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007).  *See also Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009).

[8]     *Iqbal*, 129 S. Ct. at 1949-50; *Twombly*, 550 U.S. at 570.

[9]     *Iqbal,* 129 S. Ct. at 1949.

[10]     Tenn. Code Ann. § 10-7-503(a)(2)(A) (emphasis added).

7

In his Amended Complaint, Plaintiff does not challenge the validity of the TPRA; instead, he seeks only the severance of the offensive portions of section 10-7-503 which restrict access of public records to "citizens of Tennessee."[11]

## Privileges and Immunities Clause

The Privileges and Immunities Clause of Article IV provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."[12]  The Privileges and Immunities Clause was included in the Constitution to "fuse into one Nation a collection of independent sovereign states"[13] by "plac[ing] the citizens of each State upon the same footing . . . so far as the advantages resulting from citizenship in those States are concerned."[14]  This Clause prevents states from discriminating against citizens of other states in favor of their own citizens[15] and applies to activities which are "sufficiently basic to the livelihood of the Nation."[16]  "Only with respect to those 'privileges' and 'immunities' bearing

---

[11]     (Am. Compl. ¶ 50-51.)  The Court notes that Plaintiff's Amended Complaint actually requests the Court to sever the portions of Tenn. Code Ann. § 10-7-503(a) which contain the clause "citizens of Tennessee."  However, that clause is absent from section 10-7-503(a).  Therefore, the Court interprets Plaintiff's request to apply to the phrase "by any citizen of this state."

[12]     U.S. Const. art. IV, § 2, cl. 2.

[13]     *Toomer v. Witsell*, 334 U.S. 385, 395 (1948).

[14]     *Paul v. Virginia*, 75 U.S. (8 Wall.) 168, 180 (1868).

[15]     *Hague v. CIO*, 307 U.S. 496, 511 (1939).

[16]     *Supreme Court of Va. v. Friedman*, 487 U.S. 59, 64 (1988).

upon the vitality of the Nation as a single entity must the State treat all citizens, resident and nonresident, equally."[17]

A proper Privileges and Immunities Clause analysis contains three steps. First, a court determines whether the policy at issue burdens a fundamental right protected by the Privileges and Immunities Clause.[18] If the right at issue is not protected by the Privileges and Immunities Clause or a protected right is not burdened, the Privileges and Immunities Clause does not apply to the policy. Notably, "the fundamental rights protected under the Privileges and Immunities Clause are not identical to the fundamental rights protected by other constitutional provisions and cover [a] much narrower range of activity."[19]

Second, if the first inquiry is satisfied, a court proceeds to consider whether the state has a "substantial reason" for the discriminatory practice.[20] If it does not, the provision violates the Privileges and Immunities Clause. Finally, if the state articulates a substantial reason for its discriminatory practice, a court evaluates whether that practice bears a substantial relationship to the state's objectives and the statute's purpose.[21] Only if a substantial relationship exists will a court uphold the challenged statute.

---

[17]    *Baldwin v. Fish & Game Comm'n of Mont.*, 436 U.S. 371, 383 (1978).

[18]    *Toomer*, 334 U.S. at 396.

[19]    *McBurney v. Young*, No. 11-1099, 2012 WL 286915, at *5 (4th Cir. Feb. 1, 2012) (internal punctuation omitted) (published opinion forthcoming) [hereinafter *McBurney II*].

[20]    *Id.*

[21]    *Id.*

The Supreme Court has recognized several rights as fundamental under the Privileges and Immunities Clause.  Those rights include the right to practice a trade or profession,[22] access the courts,[23] transfer property,[24] and obtain medical services.[25]  These rights share the general characteristic of being "sufficiently basic to the fundamental livelihood of the Nation" and have some basis in equal participation in areas "basic" to the economic welfare of the country.[26]

<u>Burdening of a Protected Right</u>

In his Amended Complaint, Plaintiff avers that the Citizens Only Requirement infringes upon two allegedly fundamental rights: his ability to engage in his calling as a civil rights advocate and his ability to engage in "effective advocacy and participation in the political process" because he is not able to access the information he seeks.[27]   The Court will address the two rights allegedly infringed upon by the Citizens Only Requirement in turn.

**Common Calling**

In the Amended Complaint, Plaintiff states that the Citizens Only Requirement "deprives [him] of his ability to engage in his calling as a civil rights advocate."[28]  However, Defendants do not address this contention in their Motion, nor does Plaintiff assert the validity of this claim in

---

[22]     *Toomer v. Witsell*, 334 U.S. 385, 403 (1948).

[23]     *Canadian N. Ry. Co. v. Eggen*, 252 U.S. 553, 562 (1920).

[24]     *Blake v. McClung*, 172 U.S. 239, 251-52 (1898).

[25]     *Doe v. Bolton*, 410 U.S. 179, 200 (1973).

[26]     *Baldwin v. Fish & Game Comm'n of Mont.*, 436 U.S. 371, 388 (1978).

[27]     (Am. Compl. ¶ 33-34.)

[28]     (*Id.* ¶ 33.)

his Response.  Therefore, the Court finds that Defendants have not challenged Plaintiff's claim that he is unable to engage in his common calling as protected by the Privileges and Immunities Clause.

### Engage in Effective Advocacy and Participate in the Political Process

The protection under the Privileges and Immunities Clause of the right "to engage in the political process with regard to matters of both national political and economic importance" was first recognized in 2006 by the Third Circuit in *Lee*.[29]  Furthermore, the Fourth Circuit did not quarrel with the Third Circuit's conclusion in *McBurney II*; rather, it appears that the Fourth Circuit accepted the existence of such a right but factually distinguished the case before it.[30]

Both of these cases dealt with citizen-only provisions of Delaware's Freedom of Information Act (*Lee*) and Virginia's Freedom of Information Act (*McBurney II*) nearly identical to the Citizens Only Requirement at issue here.  Due to the novelty of this issue, the recent recognition of this new right under the Privileges and Immunities Clause, and the lack of precedent in this Circuit, the Court finds that it is presented with an issue of first impression.  As such, it feels that an in-depth description and analysis of *Lee* and *McBurney II* is essential to reaching a proper decision.

In *Lee*, the plaintiff worked as Executive Director of Inner City Press/Community on the Move in New York City, and his work focused on "alleged predatory practices of banks and other financial service companies and the regulation of these entities by state and federal

---

[29]     *Lee v. Minner*, 458 F.3d 194, 199 (3d Cir. 2006).

[30]     *See McBurney II*, 2012 WL 286915, at *8.

authorities."[31]  He challenged a Delaware law permitting only Delaware citizens to access and copy public records.[32]  In recognizing the plaintiff's right to "engage in the political process with regard to matters of national political and economic importance," the Third Circuit reasoned that non-Delaware residents were not a threat to the statute's stated goal of strengthening the bond between citizens and their government by ensuring transparency and accountability.[33]  In recognizing the right to engage in the political process with regard to matters of national political and economic importance, the Third Circuit emphasized Delaware's role as a prominent home to many corporations: "Delaware's regulations have nation-wide political and economic impact, and therefore, it seems reasonable that non-citizens should have the same access to public records as Delaware citizens."[34]

The Third Circuit went on to connect "political advocacy regarding matters of national interest or interests common between the states" with the functions of "furthering a 'vital national economy' and 'vindicating individual and societal rights.'"[35]  It noted that to effectively advocate and participate in the political process, "access to information" is required.[36]  In this specific context, and with these principles in mind, the Third Circuit stated that "[b]ecause political advocacy is an 'essential activity' which 'bears upon the vitality of the Nation as a

---

[31]     *Lee*, 458 F.3d at 195.

[32]     *Id.* at 196.

[33]     *Id.* at 196-97.

[34]     *Id.* at 199.

[35]     *Id.* at 200 (internal punctuation and quotation omitted).

[36]     *Id.*

single entity,' . . . and because access to public records is necessary to the ability to engage in that activity, . . . access to public records is a right protected by the Privileges and Immunities Clause."[37]  No other court had recognized this right under the Privileges and Immunities Clause before *Lee*.

The *McBurney II* court distinguished *Lee* on its facts and, while it did not refuse to recognize the right articulated in *Lee*, it held that the right was not infringed.  In *McBurney II*, the two plaintiffs were denied access to Virginia's public records as they were not citizens of Virginia.[38]  One plaintiff, McBurney, sought access to records regarding delays in the processing of his petition for child support.[39]  The other plaintiff, Hurlbert, owned a business in which he requested real estate tax assessment records for his clients from state agencies.[40]  Both plaintiffs challenged the law's residency requirement under the Privileges and Immunities Clause, but only Hurlbert challenged it under the Dormant Commerce Clause as well.[41]  They argued that Virginia's citizens-only requirement infringed their rights of equal access to information, equal access to courts, and the ability to pursue their economic interests on equal footing.[42]  McBurney also stated that the law infringed on "his ability to advocate for his political interests and the

---

[37]     *Id.*

[38]     *See McBurney II*, 2012 WL 286915, at *1-2.

[39]     *Id.* at *2.

[40]     *Id.*

[41]     *Id.*  The Court will not address the Dormant Commerce Clause analysis in this portion of the Order.

[42]     *Id.* at *5.

interests of others similarly situated."[43]  This Court will limit its focus to the right asserted in the case at bar: the right to engage in effective advocacy and participate in the political process.

The Fourth Circuit began its analysis by noting that "the 'fundamental rights' protected under the Privileges and Immunities Clause are not identical to the 'fundamental rights' protected by other constitutional provisions and cover a much narrower range of activity."[44]  It then turned to *Lee* and interpreted *Lee* as holding that "Delaware's Freedom of Information Act violated the Privileges and Immunities Clause by limiting access to public records to Delaware's citizens."[45]

However, the Fourth Circuit distinguished *Lee* from the case before for several reasons. First, it noted that *Lee* was not binding on it and that "the specific right that *Lee* identified is not one previously recognized by the Supreme Court, or any other court, as an activity within the scope of the Privileges and Immunities Clause."[46]  Second, even if the Fourth Circuit had chosen to follow *Lee*'s rationale, the situation presented by the *McBurney II* plaintiffs materially differed from that presented in *Lee*.  The Fourth Circuit focused on the *McBurney II* plaintiffs' desire to access "information of *personal* import rather than information to advance the interests of other citizens or the nation as a whole . . . or [information] of political or economic importance."[47]  Therefore, the right identified in *Lee* and the basis for concluding that it implicates the Privileges

---

[43]     *Id.*

[44]     *Id.*

[45]     *Id.* at *8.

[46]     *Id.*

[47]     *Id.*

and Immunities Clause did not apply to the *McBurney II* plaintiffs.[48]  This Court interprets this distinction as arising from the type of information sought under the state's public records act: if the information is personal in nature, the Privileges and Immunities is not triggered, but if the information sought relates to matters of "national political or economic importance," the Privileges and Immunities Clause will necessarily be triggered.

The Fourth Circuit declined to extend this rationale to a broad right of access to information or access to public records.[49]  It noted that the Supreme Court's Privileges and Immunities Clause jurisprudence "simply does not lead" to recognizing such a broad right under the Clause.[50]  The Privileges and Immunities Clause is meant to protect only those privileges and immunities "bearing upon the vitality of the Nation as a single entity," and "access to a state's public records simply does not bear" upon that vitality.[51]  Therefore, although the Third Circuit appeared to recognize a right to access to public records in *Lee*, the Fourth Circuit narrowly construed that right: access to public records cannot be denied on the basis of citizenship when access to the records relates to matters of national political and economic importance.  Under this interpretation, situations where the access to public records is denied for reasons other than residency or the records would not relate to matters of national political and economic importance would not be offensive to the Privileges and Immunities Clause.

---

[48]     *Id.*

[49]     *See id.*

[50]     *Id.*

[51]     *Id.*

The Fourth Circuit then turned to McBurney's assertion of the Virginia residency requirements' infringement on his ability to advocate for his interests and those of others similarly situated.[52]  The court determined that he did not raise any interests beyond his personal child-support based interests in his complaint, and it therefore declined to address his ability to advocate on behalf of others.[53]  This Court is not presented with such a limited situation: Plaintiff does not seek to advocate on his own behalf, but on behalf of the citizens of this country as a whole, or at the very least, those with a similar interest in civil rights.  However, the Court finds that a review of the Fourth Circuit's analysis of McBurney's own personal interest in advocating for himself, and that interest's connection to Virginia's residency requirement, would likely be helpful in its analysis of the case at bar.  As such, the Court will continue to review *McBurney II*.

Regarding McBurney's ability to advocate for his own interests, the Fourth Circuit noted that "[t]o the extent [that] argument encompasses a general right of access to public records," it fails because access to a state's public records does not bear upon the vitality of the country as a single entity.[54]  Similarly, his argument that the citizens-only requirement prevented him from advocating was unfounded, as it did "not bar him from engaging in the political process, advocating his own interests, or advancing his political or legal arguments within [Virginia]."[55]  Thus, the Fourth Circuit recognized that Virginia's citizens-only requirement did not impair

---

[52]     *Id.*

[53]     *Id.*

[54]     *Id.*

[55]     *Id.*

McBurney's ability to advocate; it merely affected his ability to gain access to records and had no bearing on any form of advocacy.

After reviewing these two cases, the Court interprets the contours of this new fundamental right under the Privileges and Immunities Clause to depend upon both the type of information requested and the use to which that information will be put.  To the extent that challenges to residency requirements arise based on information of personal, rather than national, importance, the Privileges and Immunities Clause will not cover such challenges.  On the other hand, where a residency requirement restricts access to public records related to matters of national political and economic importance, that restriction would fall within the protection of the Privileges and Immunities Clause.

Before *Lee* and *McBurney II* were decided, the Tennessee Attorney General issued an opinion indicating that the residency-based denial of a request for state, county, and municipal records by a non-Tennessee citizen would not violate the Privileges and Immunities Clause.[56]  In this opinion, the Tennessee Attorney General addressed the validity of the Citizens Only Requirement.[57]  This opinion framed the right at issue very narrowly: its first line of inquiry addressed "whether access to public records is a fundamental right encompassed by the [Privileges and Immunities] Clause."[58]  It noted that "[i]t is important to make a clear distinction between the rights a person enjoys by virtue of being a United States citizen and the rights he

---

[56]     Tenn. Att'y Gen. Op., No. 99-067, 1999 WL 238693 (Mar. 18, 1999).

[57]     *Id.*

[58]     *Id.* at *2.

enjoys by virtue of state citizenship."[59]  While some state constitutions or statutes designate access to public records a fundamental right, Tennessee's constitution does not.[60]  As such, a denial of access to public records would not violate any rights contained in Tennessee law, and any violation would necessarily arise under federal law.[61]  Citing cases from the Supreme Court and Ninth Circuit, the Tennessee Attorney General noted that "there is no authority establishing a federal constitutional right to inspect public records. . . . Without a federally recognized fundamental right to access, the first step in the [Privileges and Immunities Clause] analysis is not met."[62]  Therefore, the Tennessee Attorney General concluded that the Citizens Only Requirement did not violate the Privileges and Immunities Clause.  This analysis appears to remain undisturbed in light of *Lee* and *McBurney II*; neither decision recognized a broad per se fundamental right of access to public records.

The Court now turns to the right asserted by Plaintiff in the case at bar.  In his Amended Complaint, Plaintiff states that the Citizens Only Requirement deprives him of "the ability to engage in 'effective advocacy and participation in the political process' because he is not able to access the information he seeks."[63]  The Supreme Court has never held that the Privileges and Immunities Clause protects only economic interests; therefore, for the Court to open to the door to Plaintiff's claim that his facially noneconomic fundamental right to participate in the political

---

[59]  *Id.* at *3.

[60]  *See id.*

[61]  *Id.*

[62]  *Id.*

[63]  (Am. Compl. ¶ 34.)

process is covered by the Privileges and Immunities Clause would not be beyond the bounds of reason.[64]

Notably, the purpose of the TPRA is "to promote public awareness of the government's actions and to ensure the accountability of government officials and agencies by facilitating the public's access to governmental records."[65]  Moreover, the Tennessee Supreme Court recognized the importance of to access of public records as early as 1903, when it held that Memphis residents concerned about the city's financial condition had the right to inspect the city's records.[66]  The 1957 codification of this public access doctrine resulted in the TPRA; as such, Tennessee's acknowledgment of these rights arose in the twentieth century.

In their Motion, Defendants focus on the Privileges and Immunities Clause's origins as instructing that political participation is not a fundamental right protected by the Privileges and Immunities Clause.[67]  They state that the Privileges and Immunities Clause was "intended to create a national economic union," and violations arise when citizens of one state coming to another state are not guaranteed equality of treatment relating to that national economic union.[68]  Defendants argue that the Citizens Only Requirement differs from other laws struck down by the Supreme Court under the Privileges and Immunities Clause: rather than stifling the rights of a citizen venturing into another state in ways that jeopardize the national economic union, the

---

[64]     *Supreme Court of N.H. v. Piper*, 470 U.S. 274, 281 n.11 (1985).

[65]     *Swift v. Campbell*, 159 S.W.3d 565, 570 (Tenn. Ct. App. 2004).

[66]     *State* ex rel. *Wellford v. Williams*, 75 S.W. 948, 958-59 (Tenn. 1903).

[67]     (Defs.' Mot. to Dismiss, D.E. # 47-1, at 9.)

[68]     (*Id.* at 9-10.)

Citizens Only Requirement denies access to state records, not state information, and that denial does not jeopardize our national economic union.[69]

Next, Defendants note that states may favor their own citizens in two relevant areas: the receipt of benefits other than as of right, such as handicap parking tags or hunting licenses, and in matters dealing with the political process, such as registering to vote or run for political office.[70]  Defendants extend this rationale to the Citizens Only Requirement and contend that control over access to state or local government records is a central attribute of state sovereignty.[71]  Finally, Defendants address Plaintiff's reliance on *Lee v. Minner*, 458 F.3d 194 (3d Cir. 2006), and argue that *Lee* is the sole case recognizing political participation as a fundamental right protected by the Privileges and Immunities Clause.[72]  Defendants urge the Court not to rely on *Lee* and instead draw the Court's attention to an Eastern District of Virginia case, *McBurney I*, in which that court declined to follow *Lee* and held that access to information is not a fundamental right within the meaning of the Privileges and Immunities Clause.[73]

In response, Plaintiff states that "Defendants argue for dismissal essentially upon" *McBurney I* and articulates four reasons in an attempt to dissuade the Court from relying upon

_____

[69]      (*Id.* at 10.)

[70]      (*Id.* at 11.)

[71]      (*Id.* at 11-12.)

[72]      (*Id.* at 12.)

[73]      (*Id.* at 14.)  *McBurney v. Cuccinelli*, 780 F. Supp. 2d 430 (E.D. Va. 2011) [hereinafter *McBurney I*].  This case is the district court decision which was affirmed in *McBurney II*.  As *McBurney II* did not issue until February 1, 2012, the parties' briefs rely on *Lee* and *McBurney I*.

it.[74]  First, Plaintiff argues that a motion under Rule 12(b)(6) merely tests whether a plaintiff's allegations state a cognizable claim and that Defendants' Motion is premature, meriting denial on that basis alone.[75]  Second, Plaintiff contends that *Lee*'s recognition that Delaware's citizens-only requirement "prevented the plaintiff from exercising his common calling as a journalist" indicates that Plaintiff has stated a cognizable claim under the Privileges and Immunities Clause.[76]  Third, Plaintiff's Amended Complaint concludes that his "ability to engage in effective advocacy and participation in the political process" has been burdened by the Citizens Only Requirement; as such, he argues that *McBurney I* is factually distinguishable from the case at bar.[77]

Finally, without explaining or articulating its relevance, Plaintiff "directs the Court's attention" to the language in the *McBurney I* opinion because it "explain[s] in detail the reasons why [P]laintiff's allegations seeking injunctive and declaratory relief had merit under the . . . Privileges and Immunities Clause."[78]  Plaintiff also conclusorily argues that *McBurney I* was before the Eastern District of Virginia on summary judgment before the case was dismissed, and contends by extension that any decision the Court would make at the motion to dismiss stage in this case would be premature.[79]

---

[74]   (Pl.'s Resp., D.E. # 48, at 4.)

[75]   (*Id.* at 5.)

[76]   (*Id.*)

[77]   (*Id.* at 5-6.)

[78]   (*Id.* at 6.)

[79]   (*Id.*)

At the outset, the Court notes that neither party briefed the third or second steps of the Privileges and Immunities Clause analysis.  As such, the Court's analysis is confined to whether Plaintiff's asserted right qualifies for protection under the Privileges and Immunities Clause. Whether the state can demonstrate that it has a substantial reason for the Citizens Only Requirement and, if so, that the Citizens Only Requirement substantially relates to those reasons, will remain questions open for resolution at summary judgment with a more factually-developed record.

In light of *Lee* and *McBurney II*, the Court finds that dismissal of Plaintiff's Privileges and Immunities claim would be inappropriate.  *Lee* stands for the proposition that the right to "engage in the political process with regard to matters of national political and economic importance" is protected under the Privileges and Immunities Clause.  In light of the Fourth Circuit's acceptance of this right's existence in *McBurney II*, the only two circuit courts to address the issue have found, whether explicitly or implicitly, that the right exists.  Therefore, for purposes of this Motion to Dismiss only, the Court will assume that under certain circumstances, the right to "engage in the political process with regard to matters of national political and economic importance" exists under the Privileges and Immunities Clause.  Therefore, the Court finds that Plaintiff has stated a claim that the Citizens Only Requirement is invalid under the Privileges and Immunities Clause, and Defendants' Motion to Dismiss is **DENIED**.

## **Dormant Commerce Clause**

The Commerce Clause provides that Congress shall have the power "[t]o regulate commerce with foreign nations, and among the several States, and with the Indian tribes."[80]  The

---

[80]    U.S. Const., art. I, § 8, cl. 3.

Dormant Commerce clause arises out the negative implication of this clause: for Congress to be able to regulate commerce among the states, the states must refrain from limiting or erecting barriers against interstate trade.[81]  The Dormant Commerce Clause is "driven by concern about economic protectionism—that is, regulatory measures designed to benefit in-state *economic interests* by burdening out-of-state competitors."[82]

The Court's analysis will depend upon the type of burden at issue, as the Supreme Court has articulated two different tiers of tests under the Dormant Commerce Clause.[83]  The first tier deals with state laws where a state law discriminates against interstate commerce on its face, in its practical effect, or in its purpose.[84]  This discrimination "simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter."[85] This tier contains an analysis similar to strict scrutiny: unless discrimination is demonstrably justified by a factor unrelated to economic protectionism, "a discriminatory law is virtually per se invalid."[86]

The second tier, commonly called the *Pike* test, is used in the absence of discrimination for the forbidden purpose.[87]  In *Pike*, the Supreme Court summarized the "general rule" emerging

---

[81]     *See Dennis v. Higgins*, 498 U.S. 439, 446 (1991).

[82]     *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337 (2008) (emphasis added).

[83]     *See LensCrafters, Inc. v. Robinson*, 403 F.3d 798, 802 (6th Cir. 2005).

[84]     *See Wyoming v. Oklahoma*, 502 U.S. 437, 454-55 (1992).

[85]     *United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338 (2007).

[86]     *Davis*, 553 U.S. at 338.

[87]     *See Pike v. Bruce Church, Inc.*, 397 U.S. 137, 141-42 (1970).

from its Dormant Commerce Clause jurisprudence: "[w]here the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."[88]  That is, courts must consider whether the state law unjustifiably burdens the interstate flow of articles of commerce.[89]  In this second tier of analysis, the law at issue will receive less severe scrutiny: the law will be upheld unless the burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits.[90]

Under Count Two, the Amended Complaint notes that state laws discriminating against interstate commerce are subject to strict scrutiny.[91]  Plaintiff then avers that the TPRA "discriminates against interstate commerce" because it restricts access to public records.[92]  In their Motion, Defendants present two reasons as to why Plaintiff's Dormant Commerce Clause claim should be dismissed.  First, they argue that the Citizens Only Requirement is not an economic protectionist provision and, as such, it does not implicate the Dormant Commerce Clause.[93]  Defendants point out that the Supreme Court has stated that "a government function is not susceptible to standard [D]ormant Commerce Clause scrutiny owing to its likely motivation

---

[88]     *Id.* at 142.

[89]     *See id.*

[90]     *Id.*

[91]     (Am. Compl. ¶ 41.)

[92]     (*Id.* ¶ 42.)

[93]     (Defs.' Mot. to Dismiss, D.E. # 47-1, at 15 ("[A]llowing access to public records is a government[al] function, not an economic endeavor.").)

by legitimate objectives distinct from the simple economic protections the Clause abhors."[94]
Defendants contend that "[j]ust as states are able to offer lower tuition to residents and limit state
unemployment and welfare payments to residents only, a state must be allowed to limit to whom
it allows access to state and local records."[95]  Moreover, Defendants return to *McBurney I* and
argue that the Citizens Only Requirement is not designed to protect in-state businesses but is
instead meant to "hold government officials accountable and prevent secrecy in government."[96]

Second, Defendants submit that if the Citizens Only Requirement falls within the
[D]ormant Commerce Clause's scope, the provision is saved by application of the market
participant exception, which allows a state or local market participant to discriminate in favor of
its residents.[97]  Defendants state that the market participant exception essentially allows states
participating in an open market to impose economically protectionist restrictions which would
otherwise violate the Dormant Commerce Clause.[98]  They then point out that Tennessee and the
municipalities within the state "participate in the market of providing public records;" this
participation therefore triggers the market participant exception and places no limits on their
activities under the Dormant Commerce Clause.[99]

---

[94]     (*Id.* at 16.)

[95]     (*Id.* at 17.)

[96]     (*Id.* at 18.)

[97]     (*Id.*)

[98]     (*Id.* at 19.)

[99]     (*Id.*)

In his Response, Plaintiff wholly fails to address Defendants' Dormant Commerce Clause arguments. Therefore, it appears to the Court that he does not oppose dismissal of his Dormant Commerce Clause claim. However, despite Plaintiff's lack of argument, the Court must make its own independent evaluation of the sufficiency of Plaintiff's Dormant Commerce Clause claim.

<u>Tier 1 Analysis</u>

Under the first tier of analysis, once a court determines that the law at issue is indeed discriminatory *against interstate commerce* on its face, in its practical effect, or in its purpose, the "crucial inquiry . . . must be directed to determining whether [the state law] is basically a protectionist measure or whether it can fairly be viewed as a law directed to legitimate local concerns."[100] This concern for legitimate local interests arises from the Supreme Court's recognition that discriminatory regulations related to government functions are likely motivated by "legitimate objectives distinct from the simple economic protections the [Dormant Commerce] Clause abhors."[101]

The Court finds that the Citizens Only Requirement is discriminatory on its face; after all, it does contain the words "be open for personal inspection by *any citizen of this state*."[102] However, as the Fourth Circuit said in *McBurney II*, "it is not enough that a statute discriminates on the basis of citizenship for it to offend [D]ormant Commerce Clause principles." Therefore, the Citizens Only Requirement must do more than discriminate against out-of-state residents on its face: that discrimination must relate to *interstate commerce*. The Court finds that the Citizens

---

[100]    *City of Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978).

[101]    *Davis*, 553 U.S. at 341.

[102]    Tenn. Code Ann. § 10-7-503(a)(2)(A).

Only Requirement does not discriminate on its face against interstate commerce; indeed, the TPRA is devoid of references to interstate commerce or economic protectionism.

Nor does the Citizens Only Requirement serve the purpose of discriminating against interstate commerce. Indeed, the purpose of the TPRA is "to promote public awareness of the government's actions and to ensure the accountability of government officials and agencies by facilitating the public's access to governmental records."[103] Therefore, the Citizens Only Requirement does not serve any economically protectionist purpose at all; rather, it is designed to ensure government accountability and promote public awareness of the government's actions.

But one method of demonstrating a Dormant Commerce Clause violation under Tier 1 remains: demonstrating a practical effect of discriminating against interstate commerce. In Plaintiff's Amended Complaint, he states that "the [TPRA] discriminates against interstate commerce because it restricts access to public records." The Court interprets this phrasing to imply that the Citizens Only Requirement has the practical effect of discriminating against interstate commerce. Accepting this assertion as true, which the Court must do at the 12(b)(6) stage, the Court finds that Plaintiff has stated a claim for a violation of the Dormant Commerce Clause under Tier 1. As such, the Court need not determine whether Plaintiff has stated a claim under Tier 2 of the Dormant Commerce Clause analysis, and it now turns to Defendants' assertion of the market participant exception.

<u>Market Participant Exception</u>

The market participant exception covers states that go beyond regulation of interstate commerce and themselves participate in the market so as to exercise the right to favor their own

---

[103]     *Swift v. Campbell*, 159 S.W.3d 565, 570 (Tenn. Ct. App. 2004).

citizens above others.[104]  The Supreme Court recognized this exception because the Constitution does not "limit the ability of the States themselves to operate freely in the free market."[105]  Under the market participant exception, "[a] discriminatory . . . law does not violate the Constitution if the state or subdivision is acting as a market participant."[106]  For a state to be labeled a "market participant," two findings are required.  First, the challenged state action must relate primarily to the state's participation in the marketplace rather than to "state taxes and regulatory measures."[107]  Second, "the state control or discrimination must occur in the narrow market within which the state is participating."[108]

The Court finds Defendants' arguments regarding the market participant exception unavailing.  Although Defendants state that municipalities within the state participate in the market of providing public records, the Citizens Only Requirement relates not to the providing of public records but to the acquisition of public records.  As Defendants have not argued that Tennessee and its municipalities participate in the acquisition of public records, the Court finds that a determination of whether the market participant exception applies would be premature and inappropriate at this time.  Therefore, the Court finds that Plaintiff has stated a claim under the Dormant Commerce Clause, and Defendants' Motion to Dismiss that claim is **DENIED**.

---

[104]    *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 339 (2008) (quotation and internal punctuation omitted).

[105]    *Id.*

[106]    *Barker Bros. Waste, Inc. v. Dyer Cnty. Legislative Body*, 923 F. Supp. 1042, 1053 (W.D. Tenn. 1996).

[107]    *Id.* at 1054 (quoting *Reeves Inc. v. Stake*, 447 U.S. 429, 437 (1980)).

[108]    *Id.* (citing *South-Central Timber Dev., Inc. v. Wunnicke*, 467 U.S. 82, 97-98 (1984)).

## CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss is **DENIED**.

**IT IS SO ORDERED.**

> **s/ S. Thomas Anderson**
> S. THOMAS ANDERSON
> UNITED STATES DISTRICT JUDGE
>
> Date: February 13, 2012.