# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| **RICHARD JONES,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 10-2776-STA-dkv** |
| | ) | |
| **CITY OF MEMPHIS and JILL MADAJCZYK,** | ) | |
| **Senior Assistant City Attorney for Memphis,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Before the Court is Defendants' Motion for Summary Judgment (D.E. # 55) filed on January 24, 2012.  Plaintiff filed a Response (D.E. # 63) on February 15, 2012.  Defendants filed a Reply (D.E. # 68), filed on March 5, 2012.  Also before the Court is Plaintiff's Motion for Summary Judgment (D.E. # 56), filed on January 25, 2012.  Defendants filed a Response (D.E. # 67) on March 1, 2012.  For the reasons set forth below, Defendants' Motion is **GRANTED** and Plaintiff's Motion is **DENIED**.

## BACKGROUND

Plaintiff initially filed his Complaint on August 24, 2010, in the Middle District of Tennessee (D.E. # 1).  He also named a plethora of Defendants, but he took a nonsuit and voluntarily dismissed Phil Bredesen, Governor of Tennessee; Robert Cooper, Jr., Tennessee Attorney General; David H. Lillard, Jr., Tennessee State Treasurer; Justin Wilson, Tennessee State Comptroller; Tre Hargett, Tennessee Secretary of State; Joseph Barnes, Director of Legal

Services for the Tennessee General Assembly; Gwendolyn Sims Davis, Tennessee

Commissioner of General Services; and A.C. Warton, Jr., Mayor of Memphis.  (D.E. # 15.)

Therefore, the remaining defendants were the City of Memphis and Bridgett Handy-Clay

("Handy-Clay"), Public Records Coordinator for the City of Memphis.  Next, Plaintiff filed an

Amended Complaint (D.E. # 25) on October 20, 2010, which added a third Defendant: Jill

Madajczyk ("Madajczyk"), Senior Assistant City Attorney for Memphis.  The parties then

agreed that venue was improper in the Middle District of Tennessee and that proper venue lay in

the Western District of Tennessee, so United States District Judge Trauger transferred the case to

this Court.  (D.E. # 26-29.)

Handy-Clay filed two Motions to Dismiss (D.E. # 31, 43) on November 2, 2010, and

January 12, 2011, respectively.  However, the parties stipulated as to the dismissal of all claims

against Handy-Clay and the office of Public Records Coordinator for the City of Memphis (D.E.

# 46) on March 22, 2011.  Therefore, the defendants remaining in this case are the City of

Memphis ("Memphis") and Madajczyk.  Defendants filed a Motion to Dismiss (D.E. # 47) on

April 18, 2011, which the Court denied on February 13, 2012.  (D.E. # 62.)  The parties filed

cross Motions for Summary Judgment on January 24 and 25, 2012, while Defendants' Motion to

Dismiss was pending.

The following facts are undisputed for purposes of this Motion unless otherwise noted.

Plaintiff resides in Solon, Ohio, and works for the Reverend Al Sharpton ("Rev. Sharpton") as

the Midwest Director of National Action Network ("NAN").  (Defs.' Resp. to Pl.'s Facts, D.E. #

67-1, at 1-2.)  Founded by Rev. Sharpton in 1991, NAN promotes a civil rights agenda that

includes the fight for social justice and "one standard of justice and decency for all people

2

regardless of race, religion, national origin, and gender." (*Id.*) NAN also assists minority, disadvantaged small business owners and contractors by providing information on public contracts and giving those business owners access to winning contract bids. (*Id.* at 2.)

Defendants submit that Plaintiff is not in the trade or profession of civil rights advocacy and that he is not employed by NAN. (Pl.'s Resp. to Defs.' Facts, D.E. # 61, at 2.) Plaintiff admits that "his exclusive occupation is not in civil rights advocacy, [and he] further admits that he engages in civil rights advocacy." (*Id.*) Plaintiff earns a living as an insurance subrogation consultant for Abercrombie Cross, but he has not lost any income due to the denial of his public records request. (*Id.* at 3.) Plaintiff does not allege that the denial of his public records request interferes with his work as a consultant. (*Id.*) Moreover, Plaintiff is not compensated for his volunteer work as a civil rights advocate. (*Id.*) Although Plaintiff admits that his profession and occupation is not civil rights advocacy, Plaintiff emphasizes that he engages in civil rights advocacy. (*Id.*) The parties do not dispute that "[t]he sole effect of the [challenged provision] is that [Plaintiff] 'cannot complete his obligation as a NAN volunteer.'" (*Id.*)

NAN competes with other non-profit organizations such as The Urban League, but Plaintiff himself has no commercial competitors within the State of Tennessee. (*Id.* at 5.) Tenn. Code Ann. § 10-7-503(a) imposes an economic disadvantage on NAN because the Tennessee Urban League can access bid proposals that non-citizens cannot, which puts NAN's website at a disadvantage compared to the charitable efforts of the Tennessee Urban League. (*Id.*) NAN is a 503(c) non-profit corporation. (*Id.*)

On NAN's behalf, Plaintiff investigated the granting of a government contract in Memphis, Tennessee. (Defs.' Resp. to Pl.'s Facts, D.E. # 67-1, at 2.) The records request

related to Plaintiff's need to complete a website for NAN.  (Pl.'s Resp. to Defs.' Facts, D.E. #

61, at 5.)  On May 10, 2010, Plaintiff spoke with Handy-Clay and then emailed her the following

request:

> I am the Midwest Director for [NAN] and [Rev. Sharpton]. [Rev. Sharpton] has
> ask[ed] me to submit a public records request for the following records[: a]n
> email copy (pdf) of the wining bid for the following RFQ # 2957 for the State
> Advocacy/State Lobbying Services December 2008 [sic].

(Defs.' Resp. to Pl.'s Facts, D.E. # 67-1, at 3.)  Handy-Clay responded to Plaintiff that same day

in her official capacity as Public Records Coordinator and denied his request because Plaintiff

was not a citizen of Tennessee as required by Tenn. Code Ann. § 10-7-503(a)(1):

> This email acknowledges receipt of your request for a copy of the winning bid for
> the following RFQ # 2957.  Since it does not appear that you are a Tennessee
> resident, I must deny your request pursuant to Tennessee Code Annotated Section
> 10-7-503, [which] states: " . . . open for personal inspection by any citizen of
> Tennessee . . ."

(*Id.* (emphasis omitted).)  Handy-Clay was acting under color of state law when she denied

Plaintiff's request.  (*Id.*)  Plaintiff then contacted Madajczyk to discuss his public records

request.  (*Id.*)  After a telephone conversation with Madajczyk on May 12, 2010, she sent an

email confirmation of their conversation's contents:

> As discussed on the telephone, your open records request is being denied pursuant
> to the provisions of Tenn. Code Ann[.] § 10-7-503, which provides [that] any
> "citizen of Tennessee" has the right to inspect and/or copy public records.  This
> office denies all public record requests from any individual or entity outside of
> the State of Tennessee.

(*Id.* at 3-4.)  Madajczyk acted under color of state law in her official capacity as Senior Assistant

Attorney for the City of Memphis when she enforced the provisions of Tenn. Code Ann. § 10-7-

503(a).  (*Id.* at 4.)  Plaintiff's public records request was denied because he is not a Tennessee

4

citizen.  (Pl.'s Resp. to Defs.' Facts, D.E. # 61, at 1.)  However, Plaintiff obtained the requested

records through his Tennessee attorney after he retained counsel and a lawsuit was filed.  (*Id.*)

Plaintiff alleges that Defendants admitted that Madajczyk's denial of Plaintiff's public

records request reflects the City of Memphis' ongoing custom, policy, and practice of enforcing

the unconstitutional provisions of Tenn. Code Ann. § 10-7-503(a) to deny non-Tennesseans'

requests for public records.  (Defs.' Resp. to Pl.'s Facts, D.E. # 67-1, at 4.)  Defendants dispute

this fact.  They admit that the denial of Plaintiff's request for public records reflects the City of

Memphis' requirement to follow the law by denying public record requests by non-Tennesseans.

(*Id.*)  However, Defendants did not admit that the City of Memphis' custom, policy, and practice

is unlawful or that Tenn. Code Ann. § 10-7-503(a) is unconstitutional.  (*Id.* at 4-5; Defendants'

Ans., D.E. # 45, at 4-5.)

Each month, approximately ten to twenty percent of the public records requests received

by the City of Memphis are from out-of-state residents.  (Pl.'s Resp. to Defs.' Facts, D.E. # 61, at

3-4.)  The amount of time required for Madajczyk, the attorney who handles all public records

requests made to the City of Memphis, to respond to the public records requests is "pretty

significant."  (*Id.* at 4.)  The volume of information requested, the amount of time, energy, and

costs associated with gathering the information, and the production of the information to out-of-

state requesters increases the amount of time she spends complying with public records requests.

(*Id.*)  Defendants state that, if they were required to fulfill all public records requests, the time

and money required to fulfill them "would exhaust state resources, [thereby] jeopardizing the

state's ability to respond to requests from its own citizens [and] confounding the very purpose of

the [Tennessee Public Records Act ("TPRA")]." (*Id.*)  Plaintiff disputes this assertion because the City of Memphis can charge fees for copies of its public records.  (*Id.*)

Defendants also submitted a Statement of Additional Facts to which Plaintiff has not responded.[1]  In this Statement, Defendants respond to facts asserted by Plaintiff in his Memorandum in Support of his Motion for Summary Judgment which were not contained in his Statement of Undisputed Facts.  In his Memorandum, Plaintiff states that the City of Memphis charges for copying the requested records.  (Pl.'s Mot. for Summ. J., D.E. # 56-1, at 14.) Defendants dispute this assertion because Madajczyk testified that she *could* charge an individual for the cost of copying public records, but the record does not contain evidence that the City of Memphis *actually* charges to copy public records.  (Defs.' Statement, D.E. # 67-2, at 3.)  Moreover, Defendants point out that the record contains no evidence that the City of Memphis charges for the labor costs associated with providing public records.  (*Id.*)  Pursuant to the Schedule of Reasonable Charges for Copies of Public Records, Tennessee citizens cannot be charged labor costs unless retrieval of the requested records takes more than one hour per request.  (*Id.*)

Plaintiff alleges that the TPRA interferes with his fundamental right to advocate for others in the national political process.  (Pl.'s Mot. for Summ. J., D.E. # 56-1, at 7.)  Defendants dispute this assertion because Plaintiff did not seek public records from the City of Memphis to participate in the political process.  Instead, he sought public records to create a website "to assist disadvantaged contractors and small business owners in obtaining public contracts by

---

[1]       Plaintiff did file a Motion to Strike this Statement of Additional Facts (D.E. # 69), but the Court denied that Motion on April 6, 2012.  (D.E. # 73.)

giving disadvantaged business owners access to . . . winning contract bids." (Defs.' Statement, D.E. # 67-2, at 2-3.)

In his Memorandum, Plaintiff makes much of Madajczyk's agreement with a quote by James Madison noting that "an informed constituency is at the heart of an effective democracy." (Pl.'s Mot. for Summ. J., D.E. # 56-1, at 9.) Additionally, Madajczyk agreed with the assertion of Elisha Hodge, the Open Records Counsel of the Tennessee Comptroller's Office, that "providing access to public records promotes governmental accountability by enabling citizens to keep track of what the government is up to." (*Id.*) In response, Defendants note that Madajczyk later clarified that "a citizen is an individual who is a citizen of the State of Tennessee; therefore, [Tenn. Code Ann. § 10-7-503 does] not detract from the accountability of the government . . . because [non-citizens] don't have a say in the way the State of Tennessee or the City of Memphis operates." (Defs.' Statement, D.E. # 67-2, at 3-4.) As a basis for Section 10-7-503's limitation of access to public records to Tennessee citizens ("the Citizens Only Requirement"), Defendants point to Madajczyk's statement that the time and money required to fulfill public records requests by non-Tennesseans would exhaust state resources, thereby jeopardizing the state's ability to respond to requests from its own citizens and confounding the purpose of the TPRA. (*Id.* at 4.)

The Amended Complaint contains two Counts for Relief. First, Plaintiff alleges a violation of his rights under the Privileges and Immunities Clause as provided by 42 U.S.C. § 1983. (Am. Compl. at 6.) Second, Plaintiff alleges a violation of his rights under the Commerce Clause as provided by 42 U.S.C. § 1983. (*Id.* at 8.)        Plaintiff requests declaratory relief declaring the Citizens Only Requirement unconstitutional and injunctive relief permanently

enjoining the enforcement of the Citizens Only Requirement.  (*Id.* at 9-10.)  He seeks only

nominal damages against Memphis, but he also seeks attorney's fees.  (*Id.* at 10.)

## **STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(a) provides that the

court shall grant summary judgment if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter
of law.[2]

In reviewing a motion for summary judgment, the evidence must be viewed in the light most

favorable to the nonmoving party.[3]  When the motion is supported by documentary proof such as

depositions and affidavits, the nonmoving party may not rest on his pleadings but instead must

present some "specific facts showing that there is a genuine issue for trial."[4]  It is not sufficient

"simply [to] show that there is some metaphysical doubt as to the material facts."[5]  These facts

must be more than a scintilla of evidence and must meet the standard of whether a reasonable

juror could find by a preponderance of the evidence that the nonmoving party is entitled to a

verdict.[6]  When determining if summary judgment is appropriate, the Court should ask "whether

the evidence presents a sufficient disagreement to require submission to a jury or whether it is so

one-side that one party must prevail as a matter of law."[7]

---

[2]     Fed. R. Civ. P. 56(a).

[3]     *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

[4]     *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

[5]     *Matsushita*, 475 U.S. at 586.

[6]     *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

[7]     *Id.* at 251-52.

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[8]  In this Circuit, "this requires the nonmoving party to 'put up or shut up' [on] the critical issues of [his] asserted causes of action."[9]

## ANALYSIS

The Tennessee statutory provision at issue in this case provides in pertinent part that

> [a]ll state, county, and municipal records shall, at all times during business hours, which for public hospitals shall be during the business hours of their administrative offices, be open for personal inspection *by any citizen of this state*, and those in charge of the records shall not refuse such right of inspection to any citizens unless otherwise provided by state law.[10]

Plaintiff does not challenge the validity of the TPRA; instead, he seeks only the severance of the offensive portions of section 10-7-503 which restrict access of public records to "citizens of Tennessee."[11]

## Privileges and Immunities Clause

The Privileges and Immunities Clause of Article IV provides that "[t]he Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."[12]  The

---

[8]        *Celotex*, 477 U.S. at 322.

[9]        *Lord v. Saratoga Capital, Inc.*, 920 F. Supp. 840, 847 (W.D. Tenn. 1995) (citing *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989)).

[10]       Tenn. Code Ann. § 10-7-503(a)(2)(A) (emphasis added).

[11]       (Am. Compl. ¶ 50-51.)  The Court notes that Plaintiff's Amended Complaint actually requests the Court to sever the portions of Tenn. Code Ann. § 10-7-503(a) which contain the clause "citizens of Tennessee."  However, that clause is absent from section 10-7-503(a).  Therefore, the Court interprets Plaintiff's request to apply to the phrase "by any citizen of this state."

[12]       U.S. Const. art. IV, § 2, cl. 2.

Privileges and Immunities Clause was included in the Constitution to "fuse into one Nation a collection of independent sovereign states"[13] by "plac[ing] the citizens of each State upon the same footing . . . so far as the advantages resulting from citizenship in those States are concerned."[14]  This Clause prevents states from discriminating against citizens of other states in favor of their own citizens[15] and applies to activities which are "sufficiently basic to the livelihood of the Nation."[16]  "Only with respect to those 'privileges' and 'immunities' bearing upon the vitality of the Nation as a single entity must the State treat all citizens, resident and nonresident, equally."[17]

A proper Privileges and Immunities Clause analysis contains three steps.  First, a court determines whether the policy at issue burdens a fundamental right protected by the Privileges and Immunities Clause.[18]  If the right at issue is not protected by the Privileges and Immunities Clause or a protected right is not burdened, the Privileges and Immunities Clause does not apply to the policy.  Notably, "the fundamental rights protected under the Privileges and Immunities Clause are not identical to the fundamental rights protected by other constitutional provisions and cover [a] much narrower range of activity."[19]

---

[13]     *Toomer v. Witsell*, 334 U.S. 385, 395 (1948).

[14]     *Paul v. Virginia*, 75 U.S. (8 Wall.) 168, 180 (1868).

[15]     *Hague v. CIO*, 307 U.S. 496, 511 (1939).

[16]     *Supreme Court of Va. v. Friedman*, 487 U.S. 59, 64 (1988).

[17]     *Baldwin v. Fish & Game Comm'n of Mont.*, 436 U.S. 371, 383 (1978).

[18]     *Toomer*, 334 U.S. at 396.

[19]     *McBurney v. Young*, 667 F.3d 454, 462 (4th Cir. 2012) (internal punctuation omitted)[hereinafter *McBurney II*].

Second, if the first inquiry is satisfied, a court proceeds to consider whether the state has a "substantial reason" for the discriminatory practice.[20]  If it does not, the provision violates the Privileges and Immunities Clause.  Finally, if the state articulates a substantial reason for its discriminatory practice, a court evaluates whether that practice bears a substantial relationship to the state's objectives and the statute's purpose.[21]  Only if a substantial relationship exists will a court uphold the challenged statute.

The Supreme Court has recognized several rights as fundamental under the Privileges and Immunities Clause.  Those rights include the right to practice a trade, profession or common calling,[22] access the courts,[23] transfer property,[24] and obtain medical services.[25]  These rights share the general characteristic of being "sufficiently basic to the fundamental livelihood of the Nation" and have some basis in equal participation in areas "basic" to the economic welfare of the country.[26]

<u>Burdening of a Protected Right</u>

In his Amended Complaint, Plaintiff avers that the Citizens Only Requirement infringes upon two allegedly fundamental rights: his ability to engage in his common calling as a civil

---

[20]     *Id.*

[21]     *Id.*

[22]     *Toomer*, 334 U.S. at 403.

[23]     *Canadian N. Ry. Co. v. Eggen*, 252 U.S. 553, 562 (1920).

[24]     *Blake v. McClung*, 172 U.S. 239, 251-52 (1898).

[25]     *Doe v. Bolton*, 410 U.S. 179, 200 (1973).

[26]     *Baldwin v. Fish & Game Comm'n of Mont.*, 436 U.S. 371, 388 (1978).

rights advocate and his ability to engage in "effective advocacy and participation in the political process" because he is not able to access the information he seeks.[27]  Both parties have moved for summary judgment on both of these asserted rights; therefore, the Court will address the two rights allegedly infringed upon by the Citizens Only Requirement in turn.

### Common Calling

The Supreme Court has recognized the right to engage in one's common calling as a fundamental right under the Privileges and Immunities Clause.[28]  A "common calling" equates to one's profession.[29]  *McBurney II* contains a helpful recitation of the cases in which the Supreme Court found impermissible burdens on an individual's right to a common calling.[30]  As the Fourth Circuit noted, in each of these cases, "the provision at issue directly prohibited, restricted, or otherwise regulated the ability of the nonresident to engage in a *certain profession or trade* within the state."[31]  Furthermore, the laws at issue in those cases were "specifically directed at a *commercial activity* and differentiated between residents and nonresidents."[32]  The Fourth Circuit went on to distinguish the Virginia Freedom of Information Act resident requirement from those regulations.[33]

---

[27]    (Am. Compl. ¶ 33-34.)

[28]    *See Toomer*, 334 U.S. at 396.

[29]    *See id.*

[30]    *McBurney II*, 667 F.3d at 463-64.

[31]    *Id.* at 464 (emphasis added).

[32]    *Id.* (emphasis added).

[33]    *Id.* (noting that "it is clear [that] the [Virginia citizens only requirement] addresses no business, profession, or trade").

In their Motion, Defendants argue that Plaintiff's volunteer activities with NAN are not protected by the Privileges and Immunities Clause because they are not his livelihood.[34] Defendants point out that the Privileges and Immunities Clause's protections do not extend to hobbies and recreational activities.[35]  They point out that, because Plaintiff's profession is not as a civil rights advocate, his volunteer activities are not his common calling, and the Citizens Only Requirement does not interfere with Plaintiff's ability to do business as an insurance subrogation consultant.[36]  Therefore, Defendants contend that the Citizens Only Requirement does not impermissibly burden Plaintiff's volunteer involvement with NAN.

Plaintiff's Response does not appear to address his common calling claim; instead, he focuses on his right to engage in the political process with regard to matters of national political and economic importance and his Dormant Commerce Clause claim.[37]  However, in reply, Defendants reiterate that civil rights advocacy is not Plaintiff's common calling because he is not employed by NAN.[38]  Furthermore, Defendants aver that "the Privileges and Immunities Clause is only implicated when a law interferes with 'doing business,' [and] the [Citizens Only Requirement] does not interfere with [Plaintiff's] ability to do business."[39]  Accordingly,

---

[34]     (Defs.' Mot., D.E. # 55-1, at 8.)

[35]     (*Id.* at 9.)

[36]     (*Id.*)

[37]     (Pl.'s Resp., D.E. # 63.)

[38]     (Defs.' Reply, D.E. # 68, at 5.)

[39]     (*Id.* at 6.)

13

Defendants request that the Court grant summary judgment on Plaintiff's claim that the Citizens Only Requirement violates his ability to practice his common calling.[40]

Although Plaintiff does not directly address his common calling claim in his own Motion for Summary Judgment,[41] his Motion could be interpreted to include his common calling claim. Defendants respond to these implicit arguments by arguing that there is no precedential basis for deeming Plaintiff's volunteer activities with NAN a protected fundamental right under the Privilege and Immunities Clause's common calling jurisprudence.[42]

The Court finds that Plaintiff's common calling claim must fail. Plaintiff's profession is as an insurance subrogation consultant; he receives his income through that work. Plaintiff volunteers for NAN, and NAN does not pay him for his services. Thus, although he may be paid in the currency of good will for his work with NAN, Plaintiff's activities with NAN are not his profession or trade. Volunteer activities do not rise to the level of engagement in a profession or trade. Therefore, Plaintiff did not engage in his common calling when the Citizens Only Requirement interfered with his request for a winning contract bid from Defendants relating to the volunteer work he performed for NAN. Accordingly, he was not engaged in a fundamental right triggering the protection of the Privileges and Immunities Clause. The undisputed facts of this case do not indicate that the Citizens Only Requirement has interfered in any way with Plaintiff's paid profession as an insurance subrogation consultant. Therefore, Defendants'

---

[40]    (*Id.*)

[41]    (*See* Pl.'s Mot., D.E. # 56-1, at 4-9.)

[42]    (Defs.' Resp., D.E. # 67, at 11-12.)

Motion for Summary Judgment on this claim is **GRANTED**.  To the extent Plaintiff raises a common calling claim in his Motion for Summary Judgment, that claim is **DENIED**.

Even if Plaintiff's volunteer activities rose to the level of a common calling, the Court finds that the Citizens Only Requirement is analogous to the Virginia provision at issue in *McBurney II*.  As the Fourth Circuit acknowledged, "no Supreme Court case or precedent within this Circuit has ever held that a statute whose purpose and language is unrelated to engaging in a particular profession, trade, or livelihood implicates the right to a pursue one's common calling for purposes of the Privileges and Immunities Clause."[43]  The TPRA and the Citizens Only Requirement do not address business, professions, or trade, nor are they specifically directed at differentiating commercial activity on the basis of state residency.  Instead, they focus on the public's access to public records, which is not commercial activity and is unrelated to Plaintiff's business, profession, or trade.  Therefore, even if Plaintiff's volunteer activities with NAN could be construed as a common calling, the Court finds that the Citizens Only Requirement would not unconstitutionally infringe on that common calling under the Privileges and Immunities Clause.

### Engage in Effective Advocacy and Participate in the Political Process

In its Order Denying Defendants' Motion to Dismiss, the Court thoroughly discussed the Third and Fourth Circuit's treatment of a new fundamental right under the Privileges and Immunities Clause in *Lee* and *McBurney II*.[44]  As of the date of this Order, the Court has been unable to find additional authority interpreting *Lee* or *McBurney II*.  Therefore, the Court need

---

[43]     *McBurney II*, 667 F.3d at 464.

[44]     *See Jones v. City of Memphis*, D.E. # 62, at 11-22; No. 10-2776-STA-dkv, 2012 WL 465169, at *5-10 (W.D. Tenn. Feb. 13, 2012) [hereinafter *Jones I*]; *McBurney II*, 667 F.3d at 465; *Lee v. Minner*, 458 F.3d 194, 199 (3d Cir. 2006).

not recite the same analysis here, but it will incorporate it by reference.  However, the Court will reiterate its takeaways from *Lee* and *McBurney II* before turning to the parties' arguments.

The protection under the Privileges and Immunities Clause of the right "to engage in the political process with regard to matters of both national political and economic importance" was first recognized in 2006 by the Third Circuit in *Lee*.[45]  In recognizing the right to engage in the political process with regard to matters of national political and economic importance, the Third Circuit emphasized Delaware's role as a prominent home to many corporations: "Delaware's regulations have nation-wide political and economic impact, and therefore, it seems reasonable that non-citizens should have the same access to public records as Delaware citizens."[46] Furthermore, the Fourth Circuit did not quarrel with the Third Circuit's conclusion in *McBurney II*; rather, it appears that the Fourth Circuit accepted the existence of such a right but factually distinguished the case before it and held that the right was not infringed.[47]

In its Order, this Court interpreted the distinction in *McBurney II* as arising from the type of information sought under the state's public records act: if the information is personal in nature, the Privileges and Immunities Clause is not triggered, but if the information sought relates to matters of "national political or economic importance" and an individual's desire to participate in the political process regarding those matters, the Privileges and Immunities Clause would necessarily be triggered.[48]  Under this interpretation, situations where access to public

---

[45]     *Lee*, 458 F.3d at 199.

[46]     *Id.*

[47]     *See McBurney II*, 667 F.3d at 465-48.

[48]     *Jones I*, D.E. # 62, at 15; 2012 WL 465169, at *7.

records is denied for reasons other than residency or the records would not relate to participation in matters of national political and economic importance would not be offensive to the Privileges and Immunities Clause.[49]

After reviewing these two cases, the Court interpreted the contours of this new fundamental right under the Privileges and Immunities Clause to depend upon both the type of information requested and the use to which that information will be put.[50]  To the extent that challenges to residency requirements arise based on information of personal, rather than national, importance, the Privileges and Immunities Clause will not cover such challenges.[51]  On the other hand, where a residency requirement restricts access to public records related to matters of national political and economic importance, that restriction would fall within the bounds of the Privileges and Immunities Clause.[52]

The parties have filed cross Motions for Summary Judgment on this portion of Plaintiff's claim.  In their Motion, Defendants argue that participation in the political process is not a fundamental right protected by the Privileges and Immunities Clause.[53]  They argue that *Lee* fails to acknowledge that regulations of attributes central to state sovereignty, such as the ability to control access to state or local records, do not run afoul of the Privileges and Immunities

---

[49]     *Id.*

[50]     *Id.* at 17, *8.

[51]     *Id.*

[52]     *Id.*

[53]     (Defs.' Mot., D.E. # 55-1, at 10.)

Clause.[54]  Defendants prefer the approach of the district court decision underlying *McBurney II*, in which the Eastern District of Virginia held that "the right to access information is not a fundamental right within the meaning of the Privileges and Immunities Clause."[55]

In response, Plaintiff aligns his case with that of the plaintiff in *Lee*.  He notes that the *Lee* plaintiff was engaged in effective advocacy and participation in the political process that required access to public records.[56]  Similarly, Plaintiff contends that he seeks public records from the City of Memphis for purposes of engaging in political and civil rights advocacy, unlike the plaintiffs in *McBurney II*, who simply sought access to public records for professional reasons without overall political or economic implications.[57]  Plaintiff frames the issue before the Court broadly and argues that "the political advocacy of civil rights should be considered fundamental and a right respected and protected under the Privileges and Immunities Clause."[58]

In reply, Defendants frame the issue before the Court narrowly and focus on Plaintiff's conduct: his request for a winning contract bid.[59]  Defendants submit that any limitations on Plaintiff's request for a winning bid proposal do not hinder the formation, purpose, or

---

[54]     (*Id.*)

[55]     (*Id.* at 11.)  *McBurney v. Cuccinelli*, 780 F. Supp. 2d 430 (E.D. Va. 2011) [hereinafter *McBurney I*].

[56]     (Pl.'s Resp., D.E. # 63, at 2.)

[57]     (*Id.*)

[58]     (*Id.* at 3.)

[59]     (Defs.' Reply, D.E. # 68, at 4.)

development of the Nation, and as such, the Citizens Only Requirement does not violate the Privileges and Immunities Clause.[60]

In Plaintiff's Motion for Summary Judgment, he argues that *Lee* extended protection under the Privileges and Immunities Clause to non-legal political activism in the context of a journalist's inability to engage in political advocacy regarding topics upon which the journalist's requested information touches.[61] Plaintiff relies on the *McBurney II* court's distinction between "requesting access to public records for political engagement purposes versus for personal and economic reasons" and implies that his purported use of the requested public records—to advocate and assist minority, disadvantaged, and small businesses—falls on the "political engagement" side of the line.[62] Therefore, he urges the Court to find that the Citizens Only Requirement is unconstitutional under the Privileges and Immunities Clause.[63]

In response, Defendants state that Plaintiff's Motion "focuses on his Privileges and Immunities Clause argument and asks this Court to expand the scope of the Clause to broadly protect general civil rights advocacy. Defendants contend that such an expansion is unwarranted and would be in direct conflict with longstanding precedent interpreting the Clause, including" *Lee* and *McBurney II*.[64] Defendants note that Plaintiff requests the Court to invalidate the Citizens Only Requirement on the basis of his desire to participate in the political process, which

---

[60]     (*Id.* at 4-7.)

[61]     (Pl.'s Mot., D.E. # 56-1, at 6.)

[62]     (*Id.*)

[63]     (*See id.*)

[64]     (Defs.' Resp., D.E. # 67, at 2.)

19

could have the "logical result" of requiring Tennessee to provide access to the cardinal forms of political participation: voting in and running for political office.[65]

Defendants argue that neither *Lee* nor *McBurney II* support Plaintiff's assertions. As for *McBurney II*, they point out that the Fourth Circuit stated that "participation in the political process is not a right 'previously recognized by the Supreme Court, or any other court, as an activity within the scope of the Privileges and Immunities Clause.'"[66] Defendants then provide two bases upon which to distinguish *Lee*. First, they argue that the Third Circuit mistakenly applied the purpose of the federal Freedom of Information Act ("FOIA") to hold that Delaware's Open Records Law interfered with participating in the national political process.[67] Defendants believe that the conflation of the purpose underlying the federal FOIA with a state open records law distorted the purpose and scope of the Privileges and Immunities Clause.[68] Applying such reasoning to this case would result in an overbroad interpretation of the Privileges and Immunities Clause's protections. Defendants also note that the TPRA is meant to increase accountability between state and local governments and their constituents, not to effectuate citizens' participation in the national political arena.[69]

---

[65]   (*Id.* at 5.)

[66]   (*Id.* at 5 n.2.)

[67]   (*Id.* at 6.)

[68]   (*Id.* at 6-7.)

[69]   (*Id.* (citing *Swift v. Campbell*, 159 S.W.3d 565, 570 (Tenn. Ct. App. 2004)).)

Second, Defendants argue that the factual situation presented in *Lee* distinguishes *Lee* from this case.[70]  They cite to the *Lee* court's emphasis on Delaware's role as a bastion of corporate headquarters and activity and aver that Tennessee in general, and the City of Memphis in particular, do not play an analogous role in the national economy.  Notably, Defendants state that "[i]t cannot be said that a winning bid proposal from the City of Memphis has impact on the national political and economic environment equal to information regarding corporate governance in Delaware, the 'home to many corporations.'"[71]  Additionally, Defendants advocate an interpretation of *Lee* and *McBurney II* which would construe the Privileges and Immunities Clause to "protect political activism only when . . . there is a clear and unique impact which is necessary to maintain 'a national economic union.'"[72]  Defendants argue that this case does not present a records request related to a matter of national importance: "[w]hereas political participation in regard to the regulation and oversight of corporations under Delaware law has a 'nation-wide' impact because of Delaware's predominant role in corporate governance, obtaining a specific winning bid proposal from the City of Memphis has no such far reaching import."[73]

---

[70]     (*Id.* at 7.)

[71]     (*Id.*)

[72]     (*Id.* at 10.)

[73]     (*Id.* at 11.)

The Court need not decide whether the right recognized in *Lee* is indeed a valid fundamental right protected by the Privileges and Immunities Clause.  Even if it is, the undisputed facts of this case indicate that it would not be burdened by Defendants' denial of Plaintiff's record request.  The fundamental right articulated in *Lee* related to a plaintiff's ability to participate in the political process with regard to matters of national political and economic importance.  The Court finds that a winning contract bid for a State Advocacy/State Lobbying Services contract is not a matter of national political and economic importance, and Plaintiff has not pointed to evidence indicating that it would be.  The awarding of a government contract in the City of Memphis does not rise to the level of broad national importance of the corporate and banking records requested in *Lee*.  Unlike Delaware, Tennessee is not home to corporations with importance on the national economic stage, and its public records are of lesser national import.  Therefore, because Plaintiff did not request information enabling him to participate in the political process regarding a matter of national political and economic importance, the fundamental right identified in *Lee* was not burdened.  Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** in this regard, and Plaintiff's Motion for Summary Judgment is **DENIED**.

### Participation in National Civil Rights Activity

Because Plaintiff's asserted fundamental right to participate in national civil rights advocacy is similar to his asserted right to engage in the political process, the Court finds that the same law articulated above in *Lee* and *McBurney II* applies to its analysis of this asserted right.  Therefore, the Court will not review the law again.

In his Motion, Plaintiff states that he sought to obtain public records to engage in civil rights advocacy, not to infiltrate Tennessee's separate political community.[74]  Plaintiff points out that, while states may impose residency requirements to vote, run for public office, or receive state services, the states' power to do so "is unrelated to citizens' rights to use state records . . . to petition their national government for redress of grievances."[75]  He avers that the Citizens Only Requirement restricts his participation in national civil rights advocacy.[76]

In response, Defendants contend that Plaintiff's request for public records so that he could build a website of winning contract bid proposals is not participation in the political process, and even if it was, participation in the political process is not a fundamental right protected by the Privileges and Immunities Clause: "Plaintiff's extrapolat[ion of] the creation of a website containing winning bid proposal[s] to advocacy for others in the national political process" is tenuous and cannot be sustained.[77]  Moreover, in their Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment, Defendants "deny that the website [Plaintiff] alleges to be compiling rises to the level of civil rights advocacy or that advocacy [itself] is protected under the Privileges and Immunities Clause."[78]  Additionally, Defendants note that the Citizens Only Requirement does not directly prohibit or restrict Plaintiff's ability to engage in

---

[74]  (Pl.'s Mot., D.E. # 56-1, at 7.)  To the extent that this asserted right is separate from Plaintiff's asserted right to engage in effective advocacy and participate in the political process addressed above, the Court will consider it separately here.

[75]  (Defs.' Resp., D.E. # 67, at 2.)

[76]  (*Id.* at 8.)

[77]  (*Id.* at 8, 10.)

[78]  (Defs.' Reply, D.E. # 68, at 2.)

civil rights advocacy in Tennessee because the Citizens Only Requirement relates only to requests for public records.[79]

At the outset, the Court notes that Plaintiff's Amended Complaint did not indicate that he desired to petition the national government for redress as he now asserts; rather, the undisputed evidence has demonstrated that he wanted to build a website to assist contractors in making successful bids.  Furthermore, *Lee*'s new fundamental right was not the right to participate in national civil rights advocacy; rather, it was the right to access public information related to participation in the political process in matters of national political and economic importance. The Court will assume that national civil rights advocacy equates to participation in the political process.  However, as previously discussed, Plaintiff's national civil rights advocacy would have to relate to matters of national political and economic importance, and the Court has found that requesting one winning government contract bid from the City of Memphis does not rise to that level.  Therefore, the Citizens Only Requirement does not burden any fundamental right Plaintiff may have to engage in national civil rights advocacy.

Moreover, the Court finds that the *Lee*'s facts further distinguish it from the case at bar. In *Lee*, the Plaintiff  "submit[ted] testimony and public comments on behalf of Inner City Press/Community on the Move to banking and other regulatory agencies" on topics related to "alleged predatory practices of banks and other financial service companies" and their regulation by state and federal authorities.[80]  Such oral testimony and comments is "advocacy" in the purest sense of the word.  On the other hand, in this case, Plaintiff's advocacy is less concrete; he has

---

[79]     (*Id.* at 5.)

[80]     *Lee*, 458 F.3d at 195.

not presented evidence that he gives testimony or public comments to agencies.  Rather, Plaintiff

requested information to build a website which will assist minority contractors in making

winning contract bids.  While such action can certainly be classified as civil rights advocacy, it

fundamentally differs from the advocacy engaged in by the plaintiff in *Lee*.

The Court does not hold that civil rights advocacy is not a matter of national political and

economic importance; rather, the Court holds that Plaintiff's volunteer activities with NAN in

making the website do not rise to participation in the political process regarding a matter of

national political and economic importance due to the differences between corporate information

in Delaware and a winning contract bid in Memphis as discussed above.  Accordingly,

Defendants' Motion for Summary Judgment is **GRANTED** in this regard, and Plaintiff's Motion

for Summary Judgment is **DENIED**.

### Right of Access to Public Information

Courts have not recognized a right of access to information as fundamental under the

Privileges and Immunities Clause.  The only court to have done so is the *Lee* court, which did

not define the right broadly:

> Because political advocacy [regarding matters of national political and economic
> importance] is an "essential activity" which "bear[s] upon the vitality of the
> Nation as a single entity, . . . and because access to public records is necessary to
> the ability to engage in that activity, [the Third Circuit] conclude[d] that access to
> public records is a right protected by the Privileges and Immunities Clause.[81]

Furthermore, the *McBurney I* court noted that freedom of information statutes "did not come into

existence until the middle of the twentieth century;" therefore, the right to information has not

"at all times been enjoyed by the citizens of the several states," and it is likely that the drafters

---

[81]     *Lee*, 458 F.3d at 200.

of the Constitution contemplated the right to access information.[82]  *McBurney I* refused to recognize a broad right of access to information,[83] and *McBurney II* confirmed that "access to a state's records simply does not bear upon the vitality of the Nation as a single entity."[84]

Moreover, in its Order Denying Defendants' Motion to Dismiss, the Court noted that, although the Third Circuit appeared to recognize a right to access to public records in *Lee*, the Fourth Circuit narrowly construed that right: access to public records cannot be denied on the basis of citizenship when access to the records relates to matters of national political and economic importance.[85]  Before *Lee* and *McBurney II* were decided, the Tennessee Attorney General issued an opinion indicating that the residency-based denial of a request for state, county, and municipal records by a non-Tennessee citizen would not violate the Privileges and Immunities Clause.[86]  In its Order, the Court noted that this analysis appears to remain undisturbed in light of *Lee* and *McBurney II*; neither decision recognized a broad per se fundamental right of access to public records.[87]

In his Motion, Plaintiff avers that "the Privileges and Immunities Clause protects more than just economic interests."[88]  Plaintiff relies on the Supreme Court's dicta in *Supreme Court*

---

[82]     *McBurney I*, 780 F. Supp. 2d at 449.

[83]     *Id.* at 448-49.

[84]     *McBurney II*, 667 F.3d at 466 (internal punctuation omitted).

[85]     *Jones I*, D.E. # 62, at 15; 2012 WL 465169, at *7.

[86]     Tenn. Att'y Gen. Op., No. 99-067, 1999 WL 238693 (Mar. 18, 1999).

[87]     *Jones I*, D.E. # 62, at 17-18; 2012 WL 465169, at *8.

[88]     (Pl.'s Mot., D.E. # 56-1, at 8.)

*of New Hampshire v. Piper*,[89] which acknowledged that "[t]he lawyer who champions unpopular causes surely is . . . important to the 'maintenance or well-being of the Union,' as support for his assertion that his "right to access information in order to assist minority business[es] should be protected under the Privileges and Immunities Clause."[90]  Therefore, Plaintiff submits that the Court should extend the Privileges and Immunities Clause's protections to the non-economic right of access to public records.  In response, Defendants argue that Plaintiff's reliance on *Piper* is misplaced, as he is not seeking to vindicate any sort of federal right similar to those with which the *Piper* court was concerned.[91]

The Court is unpersuaded by Plaintiff's arguments, and declines be the first court in the country to recognize a broad right of access to public records and information.  As in *McBurney I* and *II*, the TPRA was enacted in 1957, a mere fifty-five years ago, which does not indicate that access to Tennessee's public records has been enjoyed by citizens of this country.  The Court finds that broadening the right of access to public records beyond the specific delineations articulated in *Lee* would be inappropriate and not in keeping with the traditional boundaries placed upon fundamental rights recognized by Privileges and Immunities Clause jurisprudence.  Accordingly, Plaintiff's desired "right to access information in order to assist minority" businesses and access to public records regarding non-economic information are not fundamental rights under the Privileges and Immunities Clause.  Therefore, application of the Citizens Only Requirement cannot burden his records request.

---

[89]     470 U.S. 274 (1985).

[90]     (Pl.'s Mot., D.E. # 56-1, at 8-9.)

[91]     (Defs.' Resp., D.E. # 67, at 8-9.)

Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** in this regard, and Plaintiff's Motion for Summary Judgment is **DENIED**.  Because the Court has found that all of the rights asserted by Plaintiff are either not recognized as fundamental rights protected by the Privileges and Immunities Clause or are not burdened by the Citizens Only Requirement, the Court need not address the parties' arguments regarding the substantial reasons for the Citizens Only Requirement and those reasons' substantial relationship to the TPRA's objectives and purpose.

## **Dormant Commerce Clause**

The Commerce Clause provides that Congress shall have the power "[t]o regulate commerce with foreign nations, and among the several States, and with the Indian tribes."[92]  The Dormant Commerce clause arises out of the negative implication of this clause: for Congress to be able to regulate commerce among the states, the states must refrain from limiting or erecting barriers against interstate trade.[93]  The Dormant Commerce Clause is "driven by concern about economic protectionism—that is, regulatory measures designed to benefit in-state *economic interests* by burdening out-of-state competitors."[94]

### Plaintiff's Standing

Article III of the Constitution limits the federal judicial power to "Cases" or "Controversies," thereby entailing as an "irreducible minimum" that there be (1) an injury in fact that is actual or threatened, (2) a causal relationship between the injury and the challenged

---

[92]    U.S. Const., art. I, § 8, cl. 3.

[93]    *See Dennis v. Higgins*, 498 U.S. 439, 446 (1991).

[94]    *Dep't of Revenue of Ky. v. Davis*, 553 U.S. 328, 337 (2008) (emphasis added).

conduct, and (3) a likelihood that the injury will be redressed by a favorable decision.[95]  Specific

to the Dormant Commerce Clause context, plaintiffs have standing when they are injured as a

result of unconstitutional discrimination against interstate commerce.[96]  Thus, plaintiffs are

required to plead an injury that falls within the zone of interests protected by the Commerce

Clause.[97]  The Commerce Clause is intended to prevent economic protectionism and insure the

free movement of goods between state borders, prohibiting "laws that would excite . . .

jealousies and retaliatory measures" among the several states.[98]  As such, a Dormant Commerce

Clause plaintiff's injury would need to result from economic protectionism or the impaired

movement of goods between state borders.

In their Motion, Defendants argue that Plaintiff does not have standing to raise a

Dormant Commerce Clause claim because he has not suffered an economic disadvantage caused

by the Citizens Only Requirement.[99]  Defendants interpret the injury required to be pled by

Plaintiff as one resulting in economic harm.[100]  Because Plaintiff has admitted that NAN

competes with other non-profit organizations but that he has no commercial competitors,

---

[95]     U.S. Const. art. III, § 2, cl. 1; *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 551 (1996).

[96]     *AT&T Corp. v. Rudolph*, No. 06-16, 2007 WL 647564, at *8 (E.D. Ky. Feb. 27, 2007).

[97]     *Huish Detergents, Inc. v. Warren Cnty., Ky.*, 214 F.3d 707, 710-11 (6th Cir. 2000).

[98]     *Id.* at 710 (quoting *C & A Carbone, Inc. v. Town of Clarkstown, New York*, 511 U.S. 383, 390 (1994)).

[99]     (Defs.' Mot., D.E. # 55-1, at 17.)

[100]    (*Id.* at 17.)

Defendants assert that he has not suffered an economic injury, and as such, he cannot satisfy the injury-in-fact requirement of constitutional standing.[101]  Plaintiff has not lost any income due to the Citizens Only Requirement's restrictions, and the only impediment he has suffered has been to his volunteer commitments.[102]  Accordingly, Defendants assert that Plaintiff has not suffered any economic injury or disadvantage and that he has no standing to bring his Dormant Commerce Clause claim.

In response, Plaintiff presents one statement in a footnote: "Plaintiff's interest in obtaining minority contracting information for the purposes of national civil rights and political advocacy and the resulting effect such efforts have on interstate commerce are sufficient to litigate these claims."[103]  He cited to no legal authority in support of this statement, nor did he explain how national civil rights and political advocacy would affect interstate commerce.

The Court finds that Plaintiff has not pled an injury within the zone of interest protected by the Dormant Commerce Clause.  His injury did not involve economic protectionism, nor did it result from public records' inability to move freely across state borders.  Public records are not confined to Tennessee's borders; access to them is merely restricted to state residents.  Plaintiff's conclusory statement is insufficient for the Court to find standing.  Moreover, even if Plaintiff suffered an injury in that he had to hire a Tennessee attorney to circumvent the Citizens Only Requirement and ultimately obtain his requested records, such an injury is not the result of the alleged economic protectionism about which Plaintiff complains.  Additionally, neither Plaintiff

---

[101]     (*Id.*)

[102]     (*Id.* at 18.)

[103]     (Pl.'s Resp., D.E. # 63, at 4 n.1.)

nor NAN suffered an economic injury as a result of the application of the Citizens Only Requirement: NAN is a non-profit organization which does not seek to benefit economically by engaging in its activities, and Plaintiff volunteered for NAN without pay.  Thus, Plaintiff does not have the standing necessary to bring a Dormant Commerce Claim.

<u>Plaintiff's Prudential Standing</u>

In addition to the elements of standing discussed above, prudential standing focuses on whether the plaintiffs are the proper proponents of the particular legal rights on which they base their suit.[104]  "Prudential standing encompasses the general prohibition on a litigant's raising another person's legal rights, the rules barring adjudication of generalized grievances, . . . and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked."[105]  At issue here is the type of prudential standing in which a plaintiff attempts to rest his claim to relief on the legal rights or interests of third parties; even if an injury is sufficient to satisfy Article III's requirements, that injury must generally be the plaintiff's own rather than arising from the legal rights or interests of third parties.[106]  Prudential standing for a plaintiff to bring suit on behalf of third parties contains three elements: (1) suffering an injury in fact which gives him or her a sufficiently concrete interest in the outcome of the disputed issue; (2) a close relation to the third party; and (3) some hindrance to the third party's ability to protect his or her own interests.[107]

---

[104]    *Singleton v. Wulff*, 428 U.S. 106, 112 (1976).

[105]    *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 12 (2004).

[106]    *See Duke Power Co. v. Carolina Envtl. Study Grp., Inc.*, 438 U.S. 59, 80 (1978).

[107]    *Powers v. Ohio*, 499 U.S. 400, 410-11 (1991).

In their Motion, Defendants contend that Plaintiff's discovery responses indicate that he is pursuing NAN's interests.[108]  Defendants argue that Plaintiff does not have any legally protected interest in obtaining public records from Defendants for NAN, thereby failing to meet the first prong of a prudential standing analysis.[109]  Moreover, because NAN could litigate its own interests and would not be hindered in bringing its own claim, Plaintiff should not be permitted to litigate on NAN's behalf.[110]  Plaintiffs' Response to these arguments is limited to the same footnote addressed above.

The Court finds that Plaintiff has failed to demonstrate prudential standing.  His unsupported, conclusory statement regarding the effects on interstate commerce caused by his interest in obtaining minority contracting information is insufficient to satisfy standing.  Moreover, Plaintiff requested public records as part of his work with NAN, and he intended to use the information for NAN on its website.  As such, the Court finds that this lawsuit turns upon NAN's interests rather than Plaintiff's.  However, Plaintiff has not demonstrated that NAN cannot litigate on its own behalf or that NAN would be hindered by bringing its own Dormant Commerce Clause claim.  Therefore, he has failed to satisfy the third element of prudential standing.  Accordingly, because Plaintiff lacks both the personal and prudential standing necessary to bring his Dormant Commerce Claim, Defendants' Motion for Summary Judgment is **GRANTED**.[111]

---

[108]     (Defs.' Mot., D.E. # 55-1, at 18.)

[109]     (*Id.*)

[110]     (*Id.*)

[111]     The Court does not express an opinion as to whether any plaintiff working for a non-profit organization would ever have standing under the Dormant Commerce Clause.

Dormant Commerce Clause Analysis

If Plaintiff had the standing necessary for his suit to proceed, the Court's analysis would depend upon the type of burden at issue, as the Supreme Court has articulated two different tiers of tests under the Dormant Commerce Clause.[112]  The first tier deals with state laws where a state law discriminates against interstate commerce on its face, in its practical effect, or in its purpose.[113]  This discrimination "simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter."[114]  This tier contains an analysis similar to strict scrutiny: unless discrimination is demonstrably justified by a factor unrelated to economic protectionism, "a discriminatory law is virtually per se invalid."[115]

The second tier, commonly called the *Pike* test, is used in the absence of discrimination for the forbidden purpose.[116]  In *Pike*, the Supreme Court summarized the "general rule" emerging from its Dormant Commerce Clause jurisprudence: "[w]here the statute regulates even-handedly to effectuate a legitimate local public interest, and its effects on interstate commerce are only incidental, it will be upheld unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits."[117]  That is, courts must consider

---

[112]      *See LensCrafters, Inc. v. Robinson*, 403 F.3d 798, 802 (6th Cir. 2005).

[113]      *See Or. Waste Sys., Inc. v. Dep't of Envtl. Quality of State of Or.*, 511 U.S. 93, 99 (1994); *Wyoming v. Oklahoma*, 502 U.S. 437, 454-55 (1992).

[114]      *United Haulers Ass'n v. Oneida-Herkimer Solid Waste Mgmt. Auth.*, 550 U.S. 330, 338 (2007).

[115]      *Davis*, 553 U.S. at 338.

[116]      *See Pike v. Bruce Church, Inc.*, 397 U.S. 137, 141-42 (1970).

[117]      *Id.* at 142.

whether the state law unjustifiably burdens the interstate flow of articles of commerce.[118]  In this second tier of analysis, the law at issue will receive less severe scrutiny: the law will be upheld unless the burden imposed on interstate commerce is clearly excessive in relation to the putative local benefits.[119]

Tier 1 Analysis

Under the first tier of analysis, once a court determines that the law at issue is indeed discriminatory *against interstate commerce* on its face, in its practical effect, or in its purpose, the "crucial inquiry . . . must be directed to determining whether [the state law] is basically a protectionist measure or whether it can fairly be viewed as a law directed to legitimate local concerns."[120]  This concern for legitimate local interests arises from the Supreme Court's recognition that discriminatory regulations related to government functions are likely motivated by "legitimate objectives distinct from the simple economic protections the [Dormant Commerce] Clause abhors."[121]

In its Order Denying Defendants' Motion to Dismiss, the Court held that the Citizens Only Requirement is discriminatory on its face, but it does not discriminate against *interstate commerce* on its face.[122]  The Court also found that the Citizens Only Requirement does not

---

[118]    *See id.*

[119]    *Id.*

[120]    *City of Philadelphia v. New Jersey*, 437 U.S. 617, 624 (1978).

[121]    *Davis*, 553 U.S. at 341.

[122]    *Jones I*, D.E. # 62, at 26-27; 2012 WL 465169, at *12.

serve the purpose of discriminating against interstate commerce.[123]  However, the Court left open

the question of whether the Citizens Only Requirement has a practical effect of discriminating

against interstate commerce.  For a law to have a practical effect of discriminating against

interstate commerce, as a threshold issue, it must differentiate between its treatment of in-state

and out-of-state *economic interests*.[124]

In *McBurney II*, the Fourth Circuit upheld the Virginia citizens-only requirement under a

Tier 1 analysis.  The court noted that "it is not enough that a statute discriminates on the basis of

citizenship for it to offend [D]ormant Commerce Clause principles[; r]ather, the challenged

statute must discriminate 'against interstate commerce' or 'out-of-state economic interests.'"[125]

The Virginia FOIA provision's purpose was "to provide a mechanism for access and copying of

public records to Virginia citizens to reflect that the affairs of government are not conducted in

an atmosphere of secrecy."[126]  Accordingly, the Fourth Circuit found that the provision was

"wholly silent as to commerce or economic interests, both in and out of Virginia" and that it did

not "facially, or in its effect, discriminate against interstate commerce or out-of-state economic

interests."[127]  Additionally, the Fourth Circuit noted that the "[a]ny effect on commerce is

---

[123]     *Id.* at 27; at *12.

[124]     *Or. Waste Sys.*, 511 U.S. at 99.

[125]     *McBurney II*, 667 F.3d at 469.

[126]     *Id.* (internal punctuation and citation omitted).

[127]     *Id.*

incidental and unrelated to the actual language of [Virginia's] citizens-only provision. . . .
Nothing in [Virginia's FOIA] burden 'the flow of interstate commerce.'"[128]

Notably, the purpose of the TPRA is "to promote public awareness of the government's
actions and to ensure the accountability of government officials and agencies by facilitating the
public's access to governmental records."[129]  Moreover, the Tennessee Supreme Court
recognized the importance of access to public records as early as 1903, when it held that
Memphis residents concerned about the city's financial condition had the right to inspect the
city's records.[130]  The 1957 codification of this public access doctrine resulted in the TPRA; as
such, Tennessee's acknowledgment of these rights arose in the twentieth century.

In their Motion, Defendants argue that the Citizens Only Requirement is not an economic
protectionist measure.[131]  Defendants analogize the purpose of the Citizens Only Requirement to
the law upheld in *McBurney I* and *II* and argue that Plaintiff has not offered any proof that his
economic interests have been implicated by the Citizens Only Requirement.[132]  Additionally,
Defendants argue that they are not subject to traditional Dormant Commerce Clause scrutiny
because they are engaged in providing a traditional governmental function.[133]  Defendants assert

---

[128]     *Id.*

[129]     *Swift v. Campbell*, 159 S.W.3d 565, 570 (Tenn. Ct. App. 2004).  The parties
dispute the meaning of this language, but the Court need not resolve that dispute as it does not
relate to a factual issue.

[130]     *State* ex rel. *Wellford v. Williams*, 75 S.W. 948, 958-59 (Tenn. 1903).

[131]     (Defs.' Mot., D.E. # 55-1, at 14.)

[132]     (*Id.* at 15.)

[133]     (*Id.* at 16.)

that public records are not articles of interstate commerce and that, as part of performing their traditional governmental function of issuing public records, a state must be allowed to limit access to state and local records.[134]

In response, Plaintiff returns to his argument that the TPRA is facially discriminatory against out of state citizens.[135]  He states that "[e]ven though organizations that engage in national civil rights advocacy do not sell their services to those who benefit from their efforts, a denial of access to information to those groups can, and in this case does, have an effect on interstate commerce."[136]  Plaintiff's asserted economic disadvantage is that the Tennessee Urban League can access bid proposals that non-citizens cannot, which puts NAN's website at a disadvantage as compared to the charitable efforts of the Tennessee Urban League.[137]  Plaintiff analogizes this case to those Dormant Commerce Clause cases dealing with hunting and fishing and their effects on interstate commerce: where a regulation of a natural resource substantially burdens interstate commerce, the Dormant Commerce Clause will apply even if the resource itself, "such as the beauty of Maine's lakes," is not an article of commerce per se.[138]  Plaintiff acknowledges that the information he seeks is not directly sold to those using NAN's services,

---

[134]     (*Id.* at 16-17.)

[135]     However, the Court has already held that the Citizens Only Requirement does not discriminate on its face against interstate commerce.  Plaintiff has not presented any law or argument requiring the Court to reconsider its ruling.

[136]     (Pl.'s Resp., D.E. # 63, at 4.)

[137]     (*Id.*)

[138]     (*Id.*)

but he argues that the information becomes part of the stream of commerce when minority contractors use it to obtain government contracts.[139]

Plaintiff also attacks Defendants' presented local benefit for denying public records access to out-of-state citizens—that the Citizens Only Requirement essentially conserves government time and resources.[140]  He states that, because Defendants could recoup the cost of producing the public records from the requester and that "these practices significantly impact the ability of minority contractors to obtain assistance from NAN and other organizations to better compete for those contracts, the burden on interstate commerce . . . outweighs any purported local benefit."[141]  In reply, Defendants point out that Plaintiff admitted that the Citizens Only Requirement has not economically disadvantaged Plaintiff or NAN; therefore, they argue that Plaintiff has not established differential treatment between in-state and out-of-state economic interests that benefits the former and burdens the latter.[142]  Plaintiff's Motion for Summary Judgment does not address his Dormant Commerce Clause claim.

The Court finds that the TPRA's Citizens Only Requirement does not discriminate against interstate commerce in its practical effect.  Like the provision at issue in *McBurney II*, the Citizens Only Requirement has the purpose of promoting the public's awareness of the government's actions and ensuring government accountability by facilitating the public's access

---

[139]      (*Id.* at 5.)

[140]      (*Id.*)

[141]      (*Id.*)

[142]      (Defs.' Reply, D.E. # 68, at 9.)

to government records.[143]  The TPRA is silent as to interstate commerce or economic interests,

and the Court finds that it does not facially, in its purpose, or in its effect discriminate against

interstate commerce or out-of-state economic interests.  Even if an incidental effect on interstate

commerce existed, it would not rise to the "practical effect" level so as to trigger the Dormant

Commerce Clause.

Furthermore, public records are not articles of interstate commerce, and the flow of

interstate commerce was not burdened by the denial of Plaintiff's public records request.  The

Court is unpersuaded by Plaintiff's analogy to natural resource-based Dormant Commerce

Clause cases.  Public records do not have the potential to flow in interstate commerce as would

the game obtained by hunting and fishing.  And Plaintiff's use of the information in the public

records resulted in competition between NAN, his chosen non-profit, and another Tennessee-

based non-profit.  Non-profits are, by definition, organizations which do not seek to profit from

their enterprises; therefore, their actions in promulgating websites with information obtained

through public records do not affect interstate commerce.

Accordingly, the Court finds that the Citizens Only Requirement does not discriminate

against interstate commerce on its face, in its practical effect, or in its purpose.  Therefore, a Tier

1 analysis is inapplicable.  Accordingly, the Court will turn to a Tier 2 analysis.

Tier 2 Analysis

In *McBurney II*, the Fourth Circuit noted that the appellant did not challenge the Eastern

District of Virginia's application of a Tier 2 analysis to the Virginia FOIA provision at issue.[144]

---

[143]     *See Swift*, 159 S.W.3d at 570.

[144]     *McBurney II*, 667 F.3d at 470.

As such, because the court found that the provision was constitutional under a Tier 1 analysis, the court did not revisit the district court's decision.[145]  Accordingly, the Court now turns to *McBurney I* as it evaluates the Citizens Only Requirement under Tier 2.

The Court's crucial inquiry is whether the Citizens Only Requirement is a protectionist measure or whether it is directed to legitimate local concerns with only incidental effects on interstate commerce.  In *McBurney I*, the court confronted a similar inquiry and held that the provision at issue did not implicate principles of economic protectionism.[146]  The court focused on the provision's purpose and noted that it was "not to protect in-state business . . . but instead . . . to hold government officials accountable and prevent secrecy in government."[147]  The court concluded that "[w]hile the law may have some incidental impact on out-of-state business, the goal is not to favor Virginia business over non-Virginia business" and upheld the provision.[148]

Here, the purpose of the TPRA is "to promote public awareness of the government's actions and to ensure the accountability of government officials and agencies by facilitating the public's access to governmental records."[149]  Therefore, just as in *McBurney I*, the Citizens Only Requirement does not serve any economically protectionist purpose at all; rather, it is designed to ensure government accountability and promote public awareness of the government's actions.  Moreover, although the Citizens Only Requirement has had an incidental effect on Plaintiff's

---

[145]     *Id.*

[146]     *McBurney I*, 780 F. Supp. 2d at 453.

[147]     *Id.* (citation omitted).

[148]     *Id.*

[149]     *Swift*, 159 S.W.3d at 570.

ability to gain access to Tennessee's public records, it did not have any incidental effect on interstate commerce. The records Plaintiff requested have had no effect on interstate commerce because Plaintiff used them as part of his volunteer activity to publish information on a website run by a non-profit organization. Thus, the Citizens Only Requirement does not violate the Dormant Commerce Clause, and the Court need not reach Defendants' market participant exception argument. Accordingly, if Plaintiff had standing, the Court would grant summary judgment for Defendants on his Dormant Commerce Clause claim.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants' Motion for Summary Judgment is **GRANTED**, and Plaintiff's Motion for Summary Judgment is **DENIED**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: April 11, 2012.